(136 So. 585)

## In re OPINIONS OF THE JUSTICES.

## In re PROPOSED AMENDMENT TO CONSTITUTION AUTHORIZING ISSUANCE OF INTEREST–BEARING WARRANTS AND LEVY OF INCOME TAX.

### No. 12.

Supreme Court of Alabama.

Aug. 21, 1931.

Mallory, Mallory & Lapsley, of Selma, and William B. White, William M. Rogers, and Lee C. Bradley, Jr., all of Birmingham, amici curiæ.

---

[1] Post, p. 698.
[2] Ante, p. 22.
[3] Ante, p. 44.

To the Justices of the Supreme Court of Alabama, Montgomery, Alabama.

Gentlemen:

Under section 10290, Code of Alabama, I hereby request an opinion of the Justices of the Supreme Court on the following important constitutional questions:

On July 25, 1931, the Legislature of Alabama passed an act to propose an amendment to the Constitution of Alabama to be known as article 21. A copy of the proposed amendment is hereto attached, marked Exhibit "A."

The act proposing this amendment, which passed the Senate, was amended in the House of Representatives. After the act, as amended, passed the House of Representatives, the Senate failed to concur in the amendment. A conference between the two Houses was provided for, a conference report made and agreed to and the act as amended by the conference report, was adopted in both the House and the Senate, and is the Act shown as Exhibit "A."[1] hereto. The proposed amendment in its original form or as amended was read in each House on three several days.

A copy of the act as it originally passed the Senate is attached hereto, marked Exhibit "B."[1]

A copy of the act as it passed the House after being amended is attached hereto, marked Exhibit "C."[1]

Some have raised the question as to whether the House could make the amendments, which it made, and whether the final amendments as made by both Houses could be made under the provision of the Constitution that a proposed amendment to the Constitution must be read in each House on three several days.

The contention of those who raised this point is that the amendment, which was actually proposed and which will be voted upon in the election called for the second Tuesday after the expiration of three months after the adjournment of the Legislature, was not read on three several days in both the House of Representatives and the Senate.

It is my opinion that the proposed amendment has been legally submitted. I think that the decision of the Supreme Court in the case of Jones et al. v. McDade, 200 Ala. 230, 75 So. 988, decides the questions presented with reference to amendments to the present act.

There seems to be a number of citizens who question whether the proposed amendment has been legally and constitutionally adopted by the Legislature and since the

[1] The exhibits referred to in the foregoing inquiry are, in substance, set out in the opinion of the Justices.

voters should know whether or not the amendment has been properly submitted before they vote on it, I am requesting this opinion.

Please give a written opinion on the following questions:

1. Was it legal, under the Constitution, for the House of Representatives to amend Senate Bill No. 520 as it amended it?

2. Was it legal for the House and Senate to make further amendments as were made by adopting the report of the Conferees?

3. Was the proposed amendment as finally adopted legally adopted under the Constitution of Alabama?

Respectfully,

B. M. Miller, Governor.

Montgomery, Alabama. July 29, 1931.

To His Excellency, The Governor of Alabama.

Responding to your request for an advisory opinion as to whether or not the Legislature of Alabama, in proposing the amendment to the Constitution by Senate Bill No. 520, complied with the provisions of section 284 of the Constitution that "The proposed *amendments shall be read in the house in which they originate on three several days,* and, if upon the third reading three-fifths of all the members elected to that house shall vote in favor thereof, the proposed amendments *shall be sent to the other house, in which they shall likewise be read on three several days,* and if upon the third reading three-fifths of all the members elected to that house shall vote in favor of the proposed amendments, the legislature shall order an election," etc. (Italics supplied.)

After mature consideration we are constrained to give this question a negative answer.

In brief, we state the considerations which lead to this result.

Keeping in mind the well-settled principles that "to change the Constitution in any other mode than by a convention, every requisition which is demanded by the instrument itself, must be observed." Collier, Governor, etc., v. Frierson et al., 24 Ala. 100; Johnson v. Craft, 205 Ala. 386, 87 So. 375; Realty Investment Co. v. City of Mobile, 181 Ala. 184, 61 So. 248.

That, "the requirement for several readings of subjects of consideration by legislative bodies as directed to the purposes, among others, of preventing hasty and ill-advised action, to the assurance of cautious and deliberate judgment by the bodies." Jones et al. v. McDade, 200 Ala. 230, 75 So. 988, 992.

That "the requirement of three readings in each house of proposed amendments * * * was not intended to exact these six readings of a proposed amendment in haec verba in both houses," so as to exclude the right of

either to amend to the end of perfecting the proposal for submission to the electorate "whereby the subject of consideration" may be made to harmonize with the judgment of the requisite majority in the respective bodies, thus perfecting the product of their deliberation. Jones et al. v. McDade, supra.

The request for opinion concedes that, while the amendment as originally proposed was read on three separate days in the Senate where it originated, and passed, yet as amended it was only read in the Senate on the last legislative day, the same day it had its final reading in the House.

The subject and substance of the proposed amendment as it originated and passed through the Senate—it proposed a new article to the Constitution designated as article 21, authorizing the issuance of interest-bearing warrants by the state, not exceeding $15,-000,000 for the purpose of paying a past-due indebtedness outstanding on September 30, 1931, other than an amount due to any department or trust fund of the state, said warrants to be in denominations to be determined by the Governor, payable twenty years from date, fixing the rate of interest thereon, to be paid annually, and pledging the full faith and credit of the state to their payment, and exempting them from taxation.

This proposed amendment in that form after it passed the Senate was read in the House of Representatives and referred to a legislative committee.

It was then amended and reported and read for the second time.

The subject and substance of the proposed amendment in the House was: (1) To authorize the Governor, from time to time, to negotiate temporary loans not exceeding $3,000,000 to meet temporary "deficiencies in the treasury," such loans to be a direct obligation of the state, and to be paid before any other loan is procured, exempting warrants issued therefor from taxation, and requiring the proceeds of the warrants issued for such temporary loans, as well as the proceeds of the other warrants authorized in the Senate's proposal to be used for the payment of the outstanding indebtedness of the state due September 30, 1931, other than amounts due to any department or trust fund of the state, effecting a revision, if adopted, of section 213 of the Constitution. (2) Amending section 214 of the Constitution, which in its present form reads: "The legislature shall not have the power to levy in any one year a greater rate of taxation than sixty-five one-hundredths of one per centum on the value of the taxable property within this state," so as to make it read: "After the year ending September 30, 1931, the Legislature shall not have the power to levy in any one year a greater rate of tax than sixty one-hundredths of one per centum on 60% of the fair and reasonable cash value of the taxable property within this State. After the year ending September 30, 1932, the Legislature shall not have the power to levy in any one year a greater rate of tax than fifty-five one-hundredths of one per centum on 60% of the fair and reasonable cash value of the taxable property within this State. After the year ending September 30, 1933, the Legislature shall not have the power to levy in any one year a greater rate of tax than fifty one-hundredths of one per centum on 60% of the fair and reasonable cash value of the taxable property within this State. After the year ending September 30, 1934, the Legislature shall not have the power to levy in any one year a greater rate of tax than forty-five one-hundredths of one per centum on 60% of the fair and reasonable cash value of the taxable property within this State. After the year ending September 30, 1935, the Legislature shall not have the power to levy in any one year a greater rate of tax than forty one-hundredths of one per centum on 60% of the fair and reasonable cash value of the taxable property within this State. (Income shall not be deemed property for purposes of ad valorem taxes.) The Legislature may, at any time, remove any additional portion or all of the State ad valorem tax. In addition to ad valorem taxes the Legislature shall have the power to levy and collect taxes on net incomes from whatever source derived within this State. From net income an exemption of Fifteen Hundred Dollars ($1500.00) shall be allowed to unmarried persons, and an exemption of Three Thousand Five Hundred Dollars ($3,500.00) shall be allowed to the head of a family provided that only one exemption shall be allowed to husband and wife where they are living together and make separate returns for income tax. The said income tax shall not exceed the following amounts on net incomes: not less than 1% and not more than 12%. So long as the Government of the United States of America imposes and collects an income tax and its income tax returns are available to the State Government, such income tax returns as made to and accepted by the United States Government may be made the basis for the income tax returns made to the State and the State tax may be computed thereon. One-third of the net proceeds of said tax on incomes shall be applied to the support and maintenance of the public schools of the State and at least One Million Five Hundred Thousand Dollars ($1,-500,000.00) or the remaining two-thirds of said tax shall be applied annually to the interest and sinking fund to pay the warrants herein authorized. After the payment of the warrants herein provided for, the balance of the proceeds of the income tax may be appropriated by the Legislature to Governmental expenses and purposes."

After nonconcurrence by the Senate and the appointment of a conference committee by the House and Senate, that committee reported the proposed amendment in the following form:

"Article XXI. The State is authorized to sell negotiable interest-bearing warrants in an amount not to exceed Fifteen Million Dollars ($15,000,000.00) for the purpose of paying the past due indebtedness of the State outstanding on September 30, 1931, other than any amount due to any department or trust fund of the State, said warrants shall be issued under denominations, numbers and series as may be designated or determined by the Governor, and shall mature not later than January 1, 1945, shall bear interest at not more than four and one-half (4½%) per cent. per annum, payable semi-annually, and shall be issued and sold at not less than the par value thereof. The Governor of the State of Alabama is further authorized from time to time to negotiate temporary loans never to exceed Three Million Dollars ($3,000,000.-00) to meet any deficiencies in the treasury and until the same is paid no new loan shall be negotiated. For the payment of such loans and interest, the State is authorized to appropriate funds. Such warrants and loans shall be a direct obligation of the State and for the prompt and faithful payment of the principal and interest thereon the full faith and credit of the State is hereby irrevocably pledged and such warrants and evidences of the loan shall be forever exempt from taxes of every kind. The warrants herein provided for or the proceeds from the sale thereof shall be used only for the purpose of paying claims, accounts, warrants or indebtedness due by or outstanding against the State on September 30, 1931, and which have been approved by the Governor, Attorney General and State Auditor, excluding, however, any amount due to any department or trust fund of the State. Said warrants shall be drawn by the State Auditor upon the State Treasurer and the semi-annual interest thereon, as it becomes due, and the principal, at maturity, shall be payable out of the sinking fund herein provided for. To provide for the prompt payment of the warrants herein authorized together with interest thereon, and to further provide for the support and maintenance of the public schools of the State and the general expenses of the State Government, Section 214 of Article II of the Constitution is hereby amended to read as follows: Section 214 of Article II—After the year ending September 30, 1931, the Legislature shall not have the power to levy in any one year a greater rate of tax than sixty one-hundredths of one per centum on 60% of the fair and reasonable cash value of the taxable property within the State. 'After the year ending September 30, 1932, there shall be no assessment of an ad valorem tax on real estate or tangible personal property for State purposes, and no assessments made on real and personal property for county and municipal taxation purposes shall exceed 60% of its fair market value. The Legislature shall have the power to levy and collect taxes, for State purposes, on net incomes from whatever source derived within this State, and to designate and to define the incomes to be taxed and to fix the rates within the limitations prescribed herein on a graduated basis or not. (Income shall not be deemed property for purposes of ad valorem taxes).' In addition to ad valorem taxes the Legislature shall have the power to levy and collect taxes on net incomes from whatever source derived within this State. From net income an exemption of Fifteen Hundred Dollars ($1500.00) shall be allowed to unmarried persons, and an exemption of Three Thousand Five Hundred Dollars ($3,500.00) shall be allowed to the head of a family provided that only one exemption shall be allowed to husband and wife where they are living together and make separate returns for income tax. The said income tax shall not exceed the following amounts on net incomes: not less than 1% and not more than 10%. So long as the Government of the United States of America imposes and collects an income tax and its income tax returns are available to the State Government, such income tax returns as made to and accepted by the United States Government shall when practicable be made the basis for the income tax returns made to the State and the State tax may be computed thereon. One-third of the net proceeds of said tax on incomes shall be applied to the support and maintenance of the public schools of the State and at least One Million Five Hundred Thousand Dollars ($1,500,000.00) of the remaining two-thirds of said tax shall be applied annually to the interest and sinking fund to pay the warrants herein authorized. After the payment of the warrants herein provided for, the balance of the proceeds of the income tax may be appropriated by the Legislature to Governmental expenses and purposes."

And this was adopted by both Houses on the last legislative day.

██ It readily appears from the foregoing that the proposed amendment in its original form was merely to provide for the payment of the existing indebtedness of the state, and was temporary in purpose and scope.

The amendment to the proposed amendment would destroy the existing system of taxation—effecting a revision directly or by necessary implication of sections 211, 213, 214, 215, 216, and 260 of the Constitution, and probably others—and thus become the major subject and purpose of the proposed amendment, an operation affecting the life of the

state, foreign to the subject of the original proposed amendment, which was to be temporary of purpose and effect—to meet the state's existing financial obligations.

This amendment was too drastic to come within the protection of the stated principle that proposed amendments may be amended during the course of the legislative procedure for the purpose of perfecting the same and to harmonize with the judgment of the requisite majority of the two bodies.

It may be noted here that an examination of the legislative journals (House Journal 1915, pp. 306, 307–517) discloses that there was no departure from the subject and purpose of the proposed amendment considered in Jones et al. v. McDade, supra, and the decision in that case does not sustain the course of procedure in the matter under consideration.

We are therefore of opinion that the proceedings of the Legislature in the proposal of the amendment in question violated both the letter and spirit of section 284 of the Constitution, and must be declared null and void.

Respectfully submitted,
JNO. C. ANDERSON,
Chief Justice.
LUCIEN D. GARDNER,
WILLIAM H. THOMAS,
VIRGIL BOULDIN,
JOEL B. BROWN,
A. B. FOSTER,
Associate Justices.

