190 So. 78

STORRS v. HECK, State Comptroller, et al.

3 Div. 297.

Supreme Court of Alabama.

June 22, 1939.

Wm. R. Rountree, Jr., and Pettus & Fuller, all of Selma, and Richard T. Rives and Hill, Hill, Whiting & Rives, all of Montgomery, for appellant.

Thos. S. Lawson, Atty. Gen., and Wm. H. Loeb, Asst. Atty. Gen., for appellees.

THOMAS, Justice.

The petition sought a declaratory judgment as to salary alleged to be due and unpaid by the State of Alabama. Bagwell v. Woodward Iron Co., 236 Ala. 668, 184 So. 692.

The final decree from which the appeal was taken is in the following words:

"This cause coming on to be heard is submitted for final decree upon the petition, the admissions contained in the answer of respondents, and said answer, all as noted by the Register, and also upon the Journals of the House and Senate of the State of Alabama for the Special Session of 1933, of which the Court takes judicial knowledge, and the Court having heard and considered the argument of counsel is of the opinion that the so-called Sparks Amendment to the Constitution of Alabama known as Article 24 of the Constitution of Alabama is a valid part of the Constitution of Alabama, and that the salary of petitioner, while he occupied the office of Commissioner of Agriculture and Industries, and was ex officio member of the State Budget Commission for the period from the 1st day of September, 1933 to and including the 14th day of January, 1935, was fixed and controlled by the Lapsley-Lusk Bill (Gen. Acts 1933, Ex.Sess., p. 124), enacted pursuant to said Sparks Amendment to the Constitution of Alabama (Article 24 of the Constitution of Alabama).

"It is, Therefore, Considered, Ordered, Adjudged and Decreed by the Court that the Sparks Amendment (Article 24) to the Constitution of Alabama is a valid part of the Constitution of this State and that the Lapsley-Lusk Bill (Gen.Acts 1933, Ex.Sess., p. 124) is a valid and constitutional enactment and that the salary of the petitioner as Commissioner of Agriculture and Industries, and as ex officio member of the State Budget Commission of Alabama for the period from the 1st day of September 1933, to and including the 14th day of January, 1935, is fixed and controlled by the said Sparks Amendment and Lapsley-Lusk Bill, and that the petitioner is not entitled to any compensation or salary from the State of Alabama other than that which has already been paid to him."

The respondents as comptroller and as Attorney General of Alabama for answer to the contentions of petitioner, which are fully stated in paragraphs one to three inclusive of the bill of complaint, among other things state the following:

" * * * ; and respondents further admit the allegation of said paragraph that a majority of the voters who participated in an election held on July 18, 1933, voted in favor of the so-called Sparks Amendment to the Constitution, but respondents specifically deny the allegation contained in said paragraph that 'no valid constitutional amendment was ratified putting into effect the said part of the Lapsley-Lusk bill making said bill effective insofar as

petitioner is concerned,' and respondents allege that the so-called Sparks Amendment was legally and validly enacted, ratified and adopted in all respects in accordance with Section 284 of the Constitution of Alabama of 1901, in that, the requirement of three readings in each House of proposed amendments was not intended to exact such six readings of a proposed amendment in haec verba in both Houses so as to exclude the right of either House, during the course of legislative procedure, to amend the proposed amendment for the purpose of perfecting the same and to insure that it will harmonize with the judgment of the requisite majority of the two bodies, and that said Sparks Amendment when so enacted, ratified and adopted, made effective that portion of the Lapsley-Lusk bill which made the same applicable and effective insofar as petitioner was concerned.

"* * * for further answer to said first paragraph allege and say that said Sparks Amendment was legally and constitutionally enacted in that it was, in all respects, passed and adopted in accordance with the provisions of Section 284 of the Constitution of Alabama and of the other provisions thereof appertaining thereto.

"* * * and for further answer to said paragraph, respondents allege and say that the said Lapsley-Lusk Act is not invalid and unconstitutional under Section 281 of the Constitution of the State of Alabama insofar as it relates to the reduction of petitioner's compensation during his term of office, in that the said provisions of said Lapsley-Lusk Act were validly and constitutionally enacted under and by virtue of authority of the so-called Sparks Amendment, proclaimed ratified August 2, 1933, which said amendment was in all respects legally, validly and constitutionally enacted, adopted and ratified in conformity to Section 284 of the Constitution of Alabama and the other sections thereof appertaining thereto."

■ Several pertinent propositions of law have been established in this jurisdiction. In Houston County et al. v. Martin, 232 Ala. 511, 169 So. 13, 16, it is stated: "It is a well-settled rule of interpretation, applicable to constitutions as well as statutes, that it is permissible in ascertaining their purpose and intent to look to the history of the times, the existing order of things, the state of the law when the instrument was adopted, and the conditions necessitating such adoption. Fox v. McDonald, 101 Ala. 51, 13 So. 416, 21 L.R.A. 529, 46 Am.St.Rep. 98; 16 R.C.L. p. 51, § 46."

It is insisted here that a city or municipal corporation is not a subdivision of the state to be included in an amendment by the Senate to the Sparks amendment as it was originally passed by the House. Were the words "state or any subdivision thereof", as used in the original bill, sufficient to support an amendment in the Senate reading "State or any County or Municipality thereof"?

■ The purpose of the constitutional amendment in question was to authorize the Legislature to repeal constitutional limitations so as to reduce the salaries or compensation of state officers so as to avoid further tax levies and a deficit in the state treasury. Gen.Acts 1933, Ex.Sess., pp. 46 to 48 (Amend. 26A); Const.1901, §§ 22, 150, 281 and 284.

It has been declared that such was the history of the Sparks amendment and the purpose therefor is set out in Houston County v. Martin, supra.

■ Whether the organic law has been effectually amended is a judicial question. State ex rel. Garrow et al. v. Grayson, 220 Ala. 12, 20, 123 So. 573.

■ Under Sections 284–287, inclusive, of the Constitution, it is not essential that the Legislative Journals affirmatively show that the required three readings of the proposed amendment were had in haec verba in both houses. Jones v. McDade, 200 Ala. 230, 75 So. 988; In re Opinions of the Justices, 223 Ala. 365, 136 So. 585; In re Opinions of the Justices, 227 Ala. 296, 149 So. 781; Doody v. State ex rel. Mobile County, 233 Ala. 287, 171 So. 504.

■ It is further declared by this Court that bills proposing amendments to the Constitution may be duly amended in substance and in legal effect as a "legislative detail" during the course of the legislative procedure for the purpose of desired perfection and harmony to meet the effective purpose of the enactment within the rules that obtain in such matters. In re Opinions of the Justices, 223 Ala. 365, 136 So. 585; Jones v. McDade, supra.

■ It follows that a substantial and legally efficient compliance with the constitutional requirements of Section 284 of the Constitution, as to "legislative details", necessary in amendments of the organic

law is sufficient. Doody v. State ex rel. Mobile County, 233 Ala. 287, 171 So. 504; State ex rel. Garrow et al. v. Grayson, 220 Ala. 12, 123 So. 573; Johnson v. Craft, 205 Ala. 386, 87 So. 375; Realty Investment Co. v. City of Mobile, 181 Ala. 184, 61 So. 248.

In Doody v. State ex rel. Mobile County, 233 Ala. 287, 290, 171 So. 504, 506, it is well observed: "Our cases recognize the mandatory character of constitutional provisions as to amending the fundamental law (Jones v. McDade, supra; Johnson v. Craft, supra), but as to legislative details the rule has been adopted that if the constitutional requirements are met 'in substance and legal effect' it will suffice. 'To hold otherwise,' observed the court in Realty Investment Co. v. City of Mobile, 181 Ala. 184, 61 So. 248, 249, 'would subordinate substance to form, the end to the means, and this, we think, the framers of the Constitution did not intend.' There may be 'a substance in form even' as held in the more recent cases of Tommie v. City of Gadsden, 229 Ala. 521, 158 So. 763, and Salter v. City of Anniston, 220 Ala. 199, 124 So. 663."

We will permit the learned counsel for appellant to state the question presented for decision and insisted upon in argument substantially as follows:

This case involves the question of whether or not the Sparks amendment to the Constitution of Alabama, Article XXIV, was constitutionally adopted, in addition to the question of whether or not the Constitution may be suspended, as suggested in the case of Houston County v. Martin, 232 Ala. 511, 169 So. 13.

The petition avers that Mr. Storrs was Commissioner of Agriculture from January 1931 to 1935, and that on account of the enactment of the Lapsley-Lusk Bill, Gen.Acts 1933, Ex.Sess., p. 124, and the ratification of the Sparks amendment, Article XXIV of the Constitution, he was deprived of a part of his salary or compensation in the amount of $2,199.95. Petitioner avers that the Sparks amendment to the Constitution was illegally adopted, and was not in accordance with Section 284 of the Constitution *in that the amendment, as voted on by the people, was not read at length on three separate days in each House of the Legislature.* 

The Sparks amendment, which was House Bill 1 of the 1933 Special Session of the Legislature [Gen.Acts 1933, Ex.Sess.,

p. 46], was passed by the House of Representatives in the following language: "Article XXIV. All provisions of the Constitution, which prohibit the Legislature from reducing, decreasing, or diminishing the salary, fees, or compensation of any executive, legislative or judicial officer, whether elected or appointed, of this State, *or any subdivision thereof,* during the term for which he shall have been elected or appointed, are hereby suspended until October 1, 1935. Until October 1, 1935, the Legislature shall have the power and authority to reduce the salary, fees or compensation of any officer during his term of office. Any law heretofore adopted by the Legislature reducing the salary, fees or compensation of any office, effective by its terms, after the expiration of the present term of such office shall, by virtue hereto, be effective during the current term of the office affected from and after the first day of the month next succeeding the date of ratification of this amendment." (House Journal, 1933, p. 184).

The proposed amendment to the Constitution was sent to the Senate by the House, with a message from the House, as shown by Senate Journal, page 144, 145. On page 146 of the Senate Journal, House Bill No. 1 was read the first time and referred to the Committee on Constitution, Constitutional Revisions and Amendments. On page 148 of the Senate Journal, Mr. Hildreth reported for the committee House Bill No. 1 without recommendations, Mr. Hildreth being the Chairman of the Committee on Constitution, Constitutional Revisions and Amendments. The bill was read a second time at length and placed upon the calendar. On page 211 of the Senate Journal, House Bill No. 1 was taken up, the Journal reciting:

"The bill:

"H. 1. To propose an amendment to the Constitution of Alabama, to be known as Article XXIV, providing that all provisions of the Constitution which prohibit the Legislature from reducing the salary, fees, or compensation of any executive, legislative, or judicial officer of the State, or of any subdivision thereof, whether elected or appointed, during his term of office, shall be suspended until October 1, 1935; to empower the Legislature to reduce salary, fees, or compensation during the term of office of any officer, and to make effective any law, heretofore adopted

**202**

by the Legislature reducing the salary, fees, or compensation of any office, on the first day of the month next succeeding the date of ratification of this amendment.

"Was taken up.

"Mr. Teasley moved that further consideration of said bill be postponed until the next Legislative Day.

"Mr. McDowell moved to lay the motion to postpone on the table, which motion was lost.

"Yeas, 14; nays, 18.

"(And here the yea and nay roll call is set out)

"The motion of Mr. Teasley to postpone consideration until the next Legislative Day then prevailed and said bill was so postponed."

On the next legislative day House Bill No. 1 was called up (page 232 of the Journal) and Senator Lapsley offered a substitute, which is printed in the Journal. On motion of Senator McDowell (page 255) 500 copies were ordered printed of the substitute, and the consideration was continued to the twelfth legislative day. On the twelfth legislative day the bill was acted upon (page 404 of the Journal) and after amendments were offered to the Lapsley substitute, some of which were adopted and some were not. It is noted that on page 409 of the Senate Journal the following appears:

"Mr. Hildreth offered the following amendment to said substitute towit:

"Amend the Lapsley substitute for House Bill No. 1 as follows:

"1. Strike out the following in the caption to said Substitute and also wherever the same appears in the body of said substitute, viz: 'And under the authority of this amendment may continue in force until October 1, 1935, after which time any such Act shall be subject to the provisions of said Constitution in force and effect prior to the adoption of this amendment"

"2. Add the following to Section 3 of said substitute, viz:

" 'Yes (   )

" 'No (   )'

"3. Strike out the following in the caption and body of said substitute in the 7th and 8th line of the second paragraph of the proposed amendment as shown in the substitute for House Bill No. 1 viz;

" 'as herein afterwards authorized', and also strike out the word 'An' after the word 'adopt' in said line eight of said second paragraph, and insert in lieu thereof the following 'any other'

"Which was adopted.

"Mr. Craft offered the following amendment to said substitute, towit:

"Amend Lapsley Substitute for House Bill No. 1 by adding the word 'general' between the first and second words of the second and third paragraphs of the proposed amendment wherever same appears in said Act or in the caption thereof.

"And said amendment was lost."

On the same day the bill was finally passed by the Senate (Senate Journal p. 419), the form in which it passed the Senate being identical with the form of the amendment as it now appears in the Constitution.

When the amendment reached the House (page 643 House Journal) on motion of Mr. Sparks the Senate amendments were concurred in by the House on the same legislative day that the Senate message was received. Such is the legislative history of this amendment.

The differences in the amendment as it originally passed the House and as it finally passed the Senate are substantially as follows: and as presented by the State's counsel (General Acts 1933, Extra Session, pp. 46–48):

| "Original Bill | Present Constitutional Section. |
|---|---|
| "All provisions of the Constitution which prohibit the Legislature from reducing, decreasing, or diminishing the salary, fees, or compensation of any executive, legislative, or judicial officer, whether elected or appointed, *of this State, or any subdivision* thereof, during the term for which he shall have been elected or appointed, are hereby suspended until October 1, 1935. *Until October 1, 1935, the Legislature shall have the power and authority to reduce the salary, fees, or compensation of any officer during his term of office.* | "All provisions of the Constitution which prohibit or *restrict* the Legislature from decreasing or diminishing the salary, fees or compensation of any executive, legislative or judicial officer *or of any public officer or of any officer holding any civil office of profit* under this State *or any County or Municipality thereof,* whether elected or appointed, during the term for which he shall have been elected or appointed are hereby suspended until October 1, 1935. "*Provided that from and after the first day of the month next succeeding the date of the ratification and adoption of this amendment no salary, compensation, fees or commissions paid to any officer under the* |

| "Original Bill | Present Constitutional Section. |
|---|---|
| | *State or any County or Municipality thereof, shall exceed the sum of Six Thousand Dollars per annum. Said limitation of $6000.00 to be inoperative after October 1, 1935.* |
| "Any law heretofore adopted by the Legislature reducing the salary, fees, or compensation of any office, effective by its terms, after the expiration of the present term of such office, shall, by virtue hereof, be effective during the current term of the office affected from and after the first day of the month next succeeding the date of ratification of this amendment." | "Any Act of the Legislature heretofore adopted decreasing or diminishing the salary, fees or compensation of any such officer or officers, and which by its terms is to become effective after the expiration of the present term of any such officer or officers, shall, by virtue hereof, become effective from and after the first day of the month next succeeding the date of the ratification and adoption of this amendment; *Provided, however, that should the Legislature adopt any other Act or Acts decreasing or diminishing the salary, fees or compensation of any such officer or officers during the term for which such officer or officers may have been elected or appointed in a larger amount, such subsequent Act or Acts shall control. Any other Act of the Legislature adopted prior to October 1, 1935, decreasing or diminishing the salary, fees or compensation of any such officer or officers, during the term for which such officer or officers may have been elected or appointed, shall be effective from and after the first day of the month next succeeding the date of the ratification and adoption of this amendment, or from and after the adoption by the Legislature of any such Act decreasing or diminishing the salary, fees or compensation of such officer or officers."* (Italics supplied.) |

When this amendment was adopted the salaries and compensation of civil offices were protected in the extent indicated in Section 281 of the Constitution and Section 284 of the Constitution, which provided for amendment of the Constitution, and was construed in Jones v. McDade, supra; Opinions of the Justices, supra; Doody v. State ex rel. Mobile County, supra.

The question for decision is whether or not the changes made on the legislative passage of the instant bill proposing the constitutional amendment were such a departure from the subject and purpose of the proposed amendment, as originally introduced, and as passed, as to come within the recent announcements in Opinions of the Justices, 223 Ala. 365, 136 So. 585, relative to amendment to the Constitution authorizing the issue of interest bearing warrants and the levy of an income tax; or whether such changes amounted to a permissible amendment during the course of the legislative procedure necessary for perfecting and harmonizing with the judgment of a requisite majority of the two houses of the legislature. Permissible changes in the course of legislative procedure were recognized and applied in Jones v. McDade, supra; and in Doody v. State ex rel. Mobile County, 233 Ala. 287, 171 So. 504.

It should be said of Jones v. McDade, 200 Ala. 230, 237, 75 So. 988, that the fixation and alteration of the amount of compensation to be received by a limited number of the named county officers, as *judge of probate, sheriff, tax assessor, tax collector,* was amended on passage to give the right to the legislature to change compensation of *all county officers.* The amendment was: "The Legislature of Alabama may hereafter from time to time by local or general laws, fix, regulate and alter the amount of the above-named salaries and allowances, including the method and basis of their compensation, also fix, regulate and alter amount of compensation received *by all other county officers of said county.*" (Italics supplied.)

The Court said of that amendment, it was proposed through a bill introduced in the House, read and referred to the Committee on Local Legislation, and "That this committee reported it favorably; and on second reading the bill was placed on the calendar. On January 26, 1915, the bill came on for third reading. A substitute was offered, and adopted by yea and nay vote in the House, and the substitute was passed, having been read at length (House Journal, pp. 575–581); and thereupon the substitute was sent to the Senate, where it was read at length on three several days and passed."

It will be noted that the substitute adopted was not read in the house in which the bill originated on three several days.

The Opinions of the Justices, 223 Ala. 365, 368, 136 So. 585, 588, relative to the proposed amendment to the constitution authorizing issuance of interest-bearing warrants and the levy of an income tax recites: " * * * that the proposed amendment in its original form was merely to provide for the payment of the existing indebtedness of the state, and *was temporary in purpose and scope.* (Italics supplied.)

"The amendment to the proposed amendment would destroy the existing system of taxation—effecting a revision directly or by necessary implication of sections 211, 213, 214, 215, 216, and 260 of the Constitution, and probably others—and thus become the major subject and purpose of the proposed amendment, an *operation affecting* the life of the state, foreign to the subject of the original proposed amendment, which was to be temporary of purpose and effect—to meet the state's existing financial obligations.

"This amendment was too drastic to come within the protection of the stated principle that proposed amendments may be amended during the course of the legislative procedure for the purpose of perfecting the same and to harmonize with the judgment of the requisite majority of the two bodies.

"It may be noted here that an examination of the legislative journals (House Journal 1915, pp. 306, 307–517) discloses that there was no departure from the subject and purpose of the proposed amendment considered in Jones et al. v. McDade, supra, and the decision in that case does not sustain the course of procedure in the matter under consideration."

That was a material amendment made on the passage of the proposed amendment and is distinguishable from the amendments considered in Jones v. McDade, supra, and in the instant case.

■ Under the prerogative right cases the distinction is made between the state and county on the one hand *as an involuntary corporation* and the municipality or city as a voluntary corporation on the other. This distinction is recognized in the enforcement of a preference as to payments from deposits of public funds in insolvent banks being liquidated. Montgomery v. City of Athens, 229 Ala. 149, 155 So. 551; Montgomery v. Wadsworth, 226 Ala. 667, 148 So. 419, and authorities cited; State v. Williams, Supt. of Banks, 236 Ala. 272, 181 So. 792; Montgomery v. State, 228 Ala. 296, 153 So. 394; Montgomery v. Sparks, 225 Ala. 343, 142 So. 769; State, ex rel. Wilkinson v. Lane, 181 Ala. 646, 62 So. 31.

However, this line of cases is not important here, since this Court in Yeilding et al. v. State ex rel. Wilkinson, 232 Ala. 292, 295, 296, 167 So. 580, has treated counties and cities as political subdivisions of the State. Robbins v. City of Sheffield, Ala.Sup., 188 So. 874. This is the sense in which the matter for consideration is to be viewed, weighed and determined. Mr. Justice Knight in the Yeilding case, Supra, dealing with a political phase of the matter, aptly observed [232 Ala. 292, 167 So. 582]:

"It is clear, however, that counties and cities are political subdivisions of the state, each created by the sovereign power of the state, in accordance with the sovereign will, and each exercising such power, and only such power, as is conferred upon it by law. Each is a creature of the statute, and the same power which can create, can abolish.

\* \* \* \* \* \*

"It is thus obvious that in the appointment and selection of appointees, agents, and officers in certain counties, and cities within such counties, and who may be paid out of the public funds of such counties and cities, the Legislature was dealing with but one subject, and that subject related to the administration of public affairs intrusted to its creatures, and over which it held the power to impose its sovereign will, in short, over which it had the power of life and death. In speaking to the said counties and cities through the act in question it spoke but one voice, and for one purpose; economy and efficiency in the administration of the affairs of the political entities which it had created.

"This being true, can it be said that the act impinges upon section 45 of the Constitution? We think not."

The amendment originally proposed, authorizing the issuance of interest bearing warrants for the payment of all past due state indebtedness outstanding in September, 1931, was condemned in the Opinion of the Justices, 223 Ala. 365, 136 So. 585. However, in said opinion the Justices rec-

ognized the rule announced in Jones v. Mc-Dade, supra, and such is the rule applicable to the Sparks amendment now under consideration. This is indicated by the State's counsel as follows: "The proposed amendment was read on three separate days in the Senate where it originated and passed but when it reached the House a substitute was offered which added provisions amending Section 214 of the Constitution relative to the rate of ad valorem taxation and authorizing the levy of an income tax. The purpose of the amendment offered in the House was to drastically reduce and finally to abolish ad valorem taxes in the State of Alabama and substitute an income tax for such ad valorem tax. The Senate failed to concur in this amendment by the House and a conference committee was appointed composed of members from both Houses and that committee further amended the bill along the same lines."

■■ In a word, the three amendments made to the Sparks amendment did not defeat it. (1) The change from "or any subdivision thereof" authorized the amendment to include "counties and municipalities." Yeilding v. State, supra; (2) the insertion of the provision that after adoption no salary etc., shall exceed $6,000 per annum, such limitation being inoperative after October 1, 1935, was a limitation of the power of the Legislature to fix any salary in excess of the named amount. Houston County v. Martin, 232 Ala. 511, 169 So. 13; (3) the provision for subsequent acts limiting such official compensation was in legal effect the same as the original—"All provisions of the Constitution which prohibit the Legislature from reducing * * salaries * * are hereby suspended until October 1, 1935"—as the bill passed contained the words, "Any Act of the Legislature heretofore adopted decreasing or diminishing the salary * * * of any such officer. * * *." Thus the foregoing Senate amendments did not constitute a departure from the original Sparks bill, but were added for the perfection and clarification thereof within legislative competency. Gen.Acts 1933, Ex.Sess., pp. 46–48.

■ When we consider the history and the purpose of the Sparks Amendment, and the decisions we have cited, we hold that the instant amendment was in all respects duly, legally and constitutionally passed through both houses of the Legislature, and that it became and is a valid provision of the Constitution of Alabama. Doody v. State ex rel. Mobile County, 233 Ala. 287, 171 So. 504, and authorities we have cited above.

It results that the judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER, BOULDIN, FOSTER, and KNIGHT, JJ., concur.

BROWN, J., concurs in conclusion.

BROWN, Justice.

I concur in the result of this case solely on the ground that under the provisions of Section XXVI, relating to "State Debts," original Section 213 as amended (Skinner's Alabama Constitution Annotated, p. 987), makes the question stated in the majority opinion moot. Under the amendment, whether the "Sparks *Suspension*" is valid or void, the right of the petitioner Storrs to recover is foreclosed by the provisions that: "In case there is, at the end of any fiscal year, insufficient money in the State Treasury for the payment of all proper claims presented to the State Comptroller for the issuance of warrants, the Comptroller shall issue warrants for that proportion of each such claim which the money available for the payment of all of said claims bears to the whole, and such warrants for such prorated sums shall thereupon be paid by the State Treasurer. At the end of each fiscal year all unpaid appropriations which exceed the amount of money in the State Treasury subject to the payment of the same after the proration above provided for, shall thereupon become *null and void* to the extent of such excess. * * *." (Italics supplied.)

I am of the opinion that the Legislature did not comply with Section 284 of the Constitution in proposing the amendment, that the paper finally adopted was a radical departure in some respects from the original proposal, and was not read on three separate days in each house.

BOULDIN, J., concurs in the holding that the question is moot. Under Amendment XXVI there cannot exist any outstanding debts of this sort.