Honorable George C. Wallace
Governor of Alabama
State Capitol
Montgomery, Alabama 36130
Dear Sir:
We acknowledge receipt of yours of 28 June 1976 that reads:
“The Honorable Chief Justice ánd Associate Justices of the Supreme Court of Alabama
Judicial Building
Montgomery, Alabama 36130
“Dear Sirs and Madam:
“Important constitutional questions have arisen concerning the validity of an amendment to the Constitution of Alabama of 1901 which was proposed in Act No. 921 enacted at the 1975 Kegular Session of the Legislature of Alabama and approved by the qualified electors of the State in an election held on January 13, 1976 (‘Act No. 921’). The amendment authorizes the State to issue and sell $15,-000,000 principal amount of general obligation bonds (‘the bonds’), the proceeds from the sale of which are to be utilized for the following purposes: $7,000,000 for the construction of security mental health facilities; $2,000,000 for the construction of a seed technology center and a seed processing facility; and $6,000,000 for the construction of prison rehabilation facilities. As a result of the constitutional questions raised concerning Act No. 921, the validity of the enabling legislation *374 enacted as Act No. 1230 at the 1975 Regular Session of the Legislature of Alabama (‘Act No. 1230’), which act specifies the procedures to be followed in the sale and issuance of the Bonds, is also in issue.
“By the terms of Section 3 of Act No. 1230, the Director of Finance, the Chairman of the Alabama Mental Health Board and I, as Governor, are constituted a Bond Commission charged with the duty of establishing the terms of the Bonds and supervising their sale and issuance. Under the provisions of Act No. 1230, I am designated the chairman of the Bond Commission and it is to meet at my call. In the event the Bond Commission determines to issue the Bonds, under the terms of Act No. 1230,1, as Governor, will execute the Bonds in the name of the State. The purpose of this letter is to request you, pursuant to the provisions of Section 34 of Title 13 of the Code of Alabama of 1940 to furnish me with your written opinions on the constitutional questions presented in this request, so that I might be appropriately guided in taking the actions required of me by the aforesaid legislation.
“Constitutional questions presented. Your written opinions on the following import constitutional questions are respectfully requested:
“1. Did the submission of the aforesaid constitutional amendment to the electorate as a single proposition violate Section 284 of the Constitution of Alabama of 1901, as amended?
“2. Did the submission of the aforesaid constitutional amendment to the electorate as a single proposition violate Section 285 of the Constitution of Alabama of 1901?
“3. Was Act No. 921 adopted by the Legislature in violation of the requirement of Section 284 of the Constitution of Alabama of 1901, as amended that a bill proposing a constitutional amendment be read on ‘three several days’ in each house of the Legislature?
“4. Does Act No. 1230 violate the requirement of Section 45 of the Constitution of Alabama of 1901 that a law contain but one subject?
“5. Does Act No. 1230 violate the requirement of Section 61 of the Constitution of Alabama of 1901 that ‘no bill shall be so altered or amended on its passage through either house as to change its original purpose’?
“6. Was Act No. 1230 adopted by the Legislature in violation of the requirement of Section 63 of the Constitution of Alabama of 1901 that ‘every bill shall be read on three different days in each house’?
“Attached as an exhibit is a description of the proceedings of the Legislature regarding the adoption of Act No. 921 and Act No. 1230 as reflected in the Journals of the House and Senate for the 1975 Regular Session of the Legislature.
“Respecfully submitted,
“/s/ George C. Wallace
Governor”
Your questions are answered in the order propounded:
One and two are answered in the negative. The provisions of Section 284, as amended, and Section 285 of the Constitution of Alabama of 1901 do not prohibit submission to the electorate of a so-called dual proposition. See Brittain v. Benefield, 263 Ala. 171, 81 So.2d 667 (1955). Were there such a prohibition, the amendment under consideration would not violate it. The single proposition put before the electorate was whether the State of Alabama would become further indebted, for capital improvements and equipment, by amending its constitution to avoid prohibitions against further debt found in Section 213, as amended. The electorate was fully informed of the choice presented. In compliance with Section 284 the complete text of the proposed amendment was published four times, during the same number of weeks, in newspapers throughout the State. A conclusive presumption that the elector *375 ate was aware of the terms of the amendment was thereby created. Jones v. McDade, 200 Ala. 230, 75 So. 988 (1917).
Assuming, as we must, that the ballots used in the referendum paraphrased or summarized the title of Act 921, there was compliance with Section 285. That Section requires the substance or subject matter of each proposed amendment to be printed upon ballots, used at elections per Section 284, so that the nature of the amendment be clearly indicated. The nature was clearly indicated by reference to the basic subject matter in the title, in these words:
“ * * * an amendment to the Constitution of Alabama authorizing the issuance of not exceeding a total of $15,-000,000 principal amount of General Obligation Bonds of the State of Alabama * * *7)
A general scheme was presented to the public for its decision, on .the basic inquiry, whether to authorize the State to become indebted to the extent of $15,000,000. Coleman v. Town of Eutaw, 157 Ala. 327, 47 So. 703 (1908), Jones v. McDade, supra.
Three is answered in the negative. Was Act No. 921 read on “three several days” in each house of the Legislature as required by Section 284? Act 921 originated as House Bill 335. As introduced, it proposed a constitutional amendment authorizing issue and sale of General Obligation Bonds, in principal amount of $7,000,-000, to fund construction of security mental health facilities. It was twice read at length. It was amended by a substitute bill that raised the authorization to $9,000,000 and, in addition, provided that part of the money be used to construct a seed technology center and seed processing facility. That bill was read at length and passed by the House. It was sent to the Senate and read at length there twice. It was amended in the Senate to up the authorization to $15,000,000 and to provide that a portion of the additional proceeds from sale of bonds be used to construct prison rehabilitation facilities. The amended bill was read at length and passed by the Senate.
Were the amendments to the bill required to be read on “three several days” in each house in order to comply with Section 284? They were not.
“ * * * The proposed amendments [to the Constitution] shall be read in the house in which they originate on three several days * * * ”, commands Section 284.
There was substantial compliance with 284. Storrs v. Heck, 238 Ala. 196, 190 So. 78 (1939); See also Doody v. State ex rel. Mobile County, 233 Ala. 287, 171 So. 504 (1936). The central question in the proposed constitutional amendment, posed by original House Bill 335, was whether Alabama would incur debt. No amendment of that bill changed that question. Each of the three readings in the respective houses of the Legislature posed that question to those houses.
Four is answered in the negative. Section 45, Constitution of 1901, provides that: “ * * * Each law shall contain but one subject * * *.” The subject of the proposed amendment was debt, that of Act 1230 was the same. It was passed as “enabling legislation”, contingent upon adoption of the amendment, to implement the amendment. This court has held that Section 45 will not apply to invalidate Acts of the Legislature proposing amendments to the Constitution. Bonds v. State Department of Revenue, 254 Ala. 553, 49 So.2d 280 (1950). The general comprehensive scheme of both the Act and the Amendment being the same, the former to implement the latter, then there is but one subject of Act 1230. See Boswell v. State, 290 Ala. 349, 276 So.2d 592 (1973).
Five is answered in the negative. Was Act 1230 so altered or amended on its passage through either house [of the Legislature] as to change its original purpose? It was not. It originated as House Bill 334. Its purpose was to implement the proposed amendment. Its legislative history is, in all material respects, substantially identical to that of Act 921. Throughout the process of adoption the original purpose of 334 never *376 changed, effecting the objectives for which debt was to be incurred. There was no violation of Section 61 of the Constitution when the amendments to 334 were adopted. This is true on the same rationale and supported by the same authorities as were employed in answer to question four.
Six is answered in the negative. The reasons are the same as those stated to support the answer to question three.
Respectfully submitted,
(s) Howell T. Heflin_ HOWELL T. HEFLIN Chief Justice
(s) James N. Bloodworth_ JAMES N. BLOODWORTH
(s) Hugh Maddox_ HUGH MADDOX
(s) James H. Faulkner_ JAMES H. FAULKNER
(s) Reneau P. Almon_ RENEAU P. ALMON
(s) Janie L. Shores_ JANIE L. SHORES
(s) Eric Embrv_ ERIC EMBRY
(s) Sam A. Beattv_ SAM A. BEATTY Associate Justices