STATE OF MISSOURI at the Relation of THE STATE BUILDING COMMISSION and GUY B. PARK, DWIGHT H. BROWN, RICHARD R. NACY and CHARLES A. LEE, Constituting a Majority of Members Thereof, Relators, v. FORREST SMITH, State Auditor.—74 S. W. (2d) 27.

Court en Banc, August 13, 1934.

*Benjamin H. Charles* and *Carl Trauernicht* for relators.

*Roy McKittrick,* Attorney-General, and *Covell R. Hewitt,* Assistant Attorney-General, for respondent.

GANTT, J.—Original proceeding in mandamus. Relators seek to compel the State Auditor to register certain bonds. The case was submitted on the pleadings, and the facts may be stated as follows:

An amendment to the Constitution was submitted to the qualified voters of the State by a resolution of the General Assembly. [Laws 1933-4, Ex. Sess., p. 174.] At the election it was approved by a majority of 121,588. The pertinent parts of the amendment follow:

"The General Assembly shall have power to authorize the contracting of a debt . . . on behalf of the State and to issue bonds . . . not exceeding in the aggregate Ten Million Dollars ($10,-000,000), for the purpose of repairing, remodeling or rebuilding . . . the eleemosynary or penal institutions of this State . . .; such bonds to bear interest at a rate not exceeding five per centum (5%) per annum, payable semi-annually, and maturing not later than thirty-five (35) years from their date. Said bonds shall be issued by the State Board of Fund Commissioners in such amounts, from

time to time, as may be necessary to carry on the building program herein provided for. The proceeds of the sale or sales of any bonds issued hereunder, together with any funds granted by or otherwise received from any agency of the Federal Government in aid of the purposes herein specified, shall be paid into the state treasury and be credited to a fund to be designated 'State Building Fund,' and shall thereupon stand appropriated, without legislative action, for said purposes and for the payment of all expenses, incidental thereto. The proceeds of the sale of the Ten Million Dollars ($10,000,000) of bonds herein authorized shall be expended for the purpose of repairing, remodeling or rebuilding any of the public buildings of the State . . . devoted to eleemosynary and penal purposes, . . . and additional buildings where necessary.''

The amendment provided in detail for the collection of taxes to pay the bonds and interest. It then provided as follows:

''All funds paid into the State Building Bond Interest and Sinking Fund shall be and stand appropriated without legislative action to the payment of principal and interest of the said bonds, there to remain until paid out in discharge of the principal of said bonds and the interest accruing thereon, and no part of said fund shall be used for any other purpose so long as any of the principal of said bonds and the interest thereon shall be unpaid. . . . The General Assembly shall enact such laws as may be necessary to carry this amendment into effect.''

The auditor contends that there is no legislation ''to carry the amendment into effect.''

At the same session (Laws 1933-4, Ex. Sess., p. 107), the General Assembly enacted a law creating a State Building Commission. The act directed the commission to determine the needs of the eleemosynary and penal institutions and divide among them, according to said needs, the money realized from Federal aid and the sale of the ten million dollars of bonds to be issued under said amendment. It authorized the commission to acquire land; provide plans and specifications and make contracts in furtherance of the contemplated improvements. It provided that the expenses of said improvements be paid from the money realized from Federal aid and the sale of the bonds. It also provided that the law would take effect on the adoption of the proposed amendment by the people of the State. It is well settled that a law may be enacted to become effective on the happening of a future contingency. [State ex rel. Maggard v. Pond, 93 Mo. 606, l. c. 621, 6 S. W. 469; In re Poindexter v. Pettis County, 295 Mo. 629, l. c. 636, 246 S. W. 38.]

Thus it appears that legislation has been enacted in aid of the amendment.

Furthermore, at the time of the adoption of the resolution pro-

posing said amendment, there was in existence an act of the Legislature creating a Board of Fund Commissioners as a part of the Treasury Department of the State. [Secs. 11489-11504, inclusive, R. S. 1929.] The act directs said board as to the redemption, issuance and cancellation of bonds of the State.

Furthermore, the constitutional amendment under consideration utilized this legislation by providing that the bonds "shall be issued by the State Board of Fund Commissioners." The word "issued" as there used authorizes said board to sell the bonds. [State ex rel. Compton Co. v. Walter, 324 Mo. 290, 23 S. W. (2d) 167, 1. c. 172.] In this connection it should be stated that it is provided in said act of the Legislature as follows:

"All bonds or state certificates of indebtedness hereafter issued by this State under the direction of the board of fund commissioners shall be signed by the Governor, countersigned by the Secretary of State, with the great seal of the State attached, and the coupons for interest shall have a facsimile of the State Treasurer's signature engraved thereon. The bonds shall be registered by the State Auditor, to which he shall certify on each bond, and authenticate such registration by his signature and his official seal attached. . . . " [Sec. 11500, R. S. 1929.]

But the auditor argues that the amount of the issue, rate of interest, time of maturity, and whether coupon or registered bonds, should be fixed by legislative enactment.

It is clear from a consideration of the constitutional amendment that the people intended a sale of all the authorized issue of bonds for the purposes therein stated. The rate of interest and time of maturity, within the limits fixed by the Constitution, and whether coupon or registered bonds, are matters of minor detail and are properly left to the agency authorized to sell bonds. Indeed, conditions could be such that legislation on the subject would interfere with a sale of the bonds.

He also argues that the method of selling the bonds should be fixed by legislative enactment. This also may be left to the agency authorized to sell the bonds. However, absent legislative enactment on the question, it would be the duty of said agency to sell the bonds in the usual and customary manner by publicly advertising same for sale.

He cites Fahey v. Hackmann, 291 Mo. 351, 1. c. 378, 237 S. W. 752. In that case the question for determination was whether legislation in aid of a constitutional amendment authorizing a bond issue became effective under an emergency clause of the act, or whether it was subject to referendum. It follows that the statements in the opinion in that case with reference to the matter of fixing the amount of the issue, rate of interest and time of maturity of the bonds were un-

necessary to a determination of the question under consideration. It also follows that said statements are no authority on the question under consideration in the instant case. We think there is ample legislative authority "to carry the amendment into effect."

The auditor next challenges the regularity of the submission of the amendment to a vote of the people. The election was held on Tuesday, May 15, 1934. In Oregon County notice of the election was published once a week on April 12, 19, 26 and May 3, 1934. This did not comply with Section 2, Article XV of the Constitution, which provides as follows:

"Each proposed amendment shall be published once a week for four consecutive weeks next preceding such election, in at least one newspaper in each county of the State where a newspaper is published."

The failure of the publisher of said newspaper to literally comply with this provision of the Constitution did not invalidate the election regularly held in the other counties in the State. If it did so, a newspaper publisher, under contract to publish the notice, could intentionally or negligently defeat any proposed amendment to the Constitution. We do not think this provision of the Constitution should be so construed. Furthermore, if the entire vote of Oregon County should be counted against the amendment, it would not change the result. On the facts of this case, the notice of the election in Oregon County was a substantial compliance with the Constitution. [State ex rel. Thompson v. Winnett (Neb.), 10 L. R. A. (N. S.) 149.]

The alternative writ should be made permanent. It is so ordered. All concur.