171 So. 504

**DOODY v. STATE ex rel. MOBILE COUNTY.**

I Div. 948.

Supreme Court of Alabama.

Dec. 21, 1936.

V. R. Jansen, of Mobile, for appellant.

George A. Sossaman, of Mobile, for appellee.

Stevens, McCorvey, McLeod, Goode & Turner, of Mobile, amici curiæ.

GARDNER, Justice.

The governing body of Mobile county contracted for the sale of funding bonds in the amount of $1,200,000.00, and $150,000.00 refunding bonds, pursuant to the authority granted by the constitutional Amendment (29) adopted December 17, 1935 (1936 Cumulative Supplement to Michie's Alabama Code of 1928, p. 18; Gen.Acts 1935, p. 810), and the local enabling act, approved April 10, 1936 (Local Acts, Extra Sess. 1936, p. 58), and the validity of this bond issue is assailed in this proceeding.

It is argued that both the said constitutional amendment and the local enabling act are invalid, and we turn first to a consideration of this insistence.

As to the amendment, the attack is twofold. The first relates to the manner of its passage by the Legislature. It was in the form of an act, and after its due passage by the House and Senate, with the

290

required three-fifths majority (section 284, Constitution; Jones v. McDade, 200 Ala. 230, 75 So. 988; Johnson v. Craft, 205 Ala. 386, 87 So. 375), the bill found its way into the hands of the Governor, who, in the form of a letter addressed to the House—in which the act originated—recognized that he had no authority to suggest an amendment, but ventured to suggest a change in its terms to the end that it may be consistent with itself. By resolution, duly adopted by both Houses (Nos. 450 and 460) the bill was recalled and the signatures of the Speaker of the House and President of the Senate were erased; and that the act was subsequently duly passed with the suggested amendment, is not here questioned. The argument is to the effect that the Legislature lost control of the act after its first passage, and was without authority to order its recall and repassage to meet the suggestions of the Governor.

But we think this is too narrow a view of the legislative authority over its own procedure. The Legislature was still in session. The Governor had no authority over such a proposed amendment (section 287, Constitution; Jones v. McDade, supra; Johnson v. Craft, supra) a fact fully recognized by him in his letter to the House, but merely offered a suggested change for consideration, which he thought might prove beneficial and make the act more consistent. The proper custodian of the proposed amendment was the secretary of state (section 134, Constitution; section 778 et seq., Code 1923), and before it reached that office, and while the Legislature was in session, it had authority to order its recall for further consideration and final passage. In section 53 of our Constitution is the provision that "each house shall have power to determine the rules of its proceedings * * * and the two houses shall have all the powers necessary for the legislature of a free state." As a deliberative body the Legislature had the right of reconsideration of the bill before it reached its final custodian, and while still in continuing session. 46 Corpus Juris 1383; Crawford v. Gilchrist, 64 Fla. 41, 59 So. 963, Ann. Cas.1914B, 916; Jones v. McDade and Johnson v. Craft, supra.

We have not before us any question concerning a result if the proposed amendment had in fact reached the office of the secretary of state, and that matter is therefore left undetermined.

The bill then reached the office of secretary of state, and the Governor issued the proclamation of notice of the election as provided by section 284 of the Constitution. This proclamation was duly advertised in every county in the state, save one—Walker county, and this failure of advertisement in the county of Walker is the basis for the remaining attack on the amendment.

■ Our cases recognize the mandatory character of constitutional provisions as to amending the fundamental law (Jones v. McDade, supra; Johnson v. Craft, supra), but as to legislative details the rule has been adopted that if the constitutional requirements are met "in substance and legal effect" it will suffice. "To hold otherwise," observed the court in Realty Investment Co. v. City of Mobile, 181 Ala. 184, 61 So. 248, 249, "would subordinate substance to form, the end to the means, and this, we think, the framers of the Constitution did not intend." There may be "a substance in form even" as held in the more recent cases of Tommie v. City of Gadsden, 229 Ala. 521, 158 So. 763, and Salter v. City of Anniston, 220 Ala. 199, 124 So. 663. And if we look to substance in the instant case, no difficulty is encountered, for it appears undisputedly that the proposed amendment was adopted by the voters of the state by a majority considerably in excess of the total vote of Walker county. Thus the purpose of the publication was fully served, and the result could in no manner have been affected by this omission. It may properly be termed "an unimportant accident," to use the language of the Nebraska court in State v. Winnett, 78 Neb. 379, 110 N.W. 1113, 1116, 10 L.R.A.(N.S.) 149, 15 Ann. Cas. 781, a case much in point and fully sustaining this conclusion, which we consider also in harmony with our own authorities last above cited.

The cases of Manos v. State, 98 Tex. Cr.R. 87, 263 S.W. 310; Fahey v. Hackmann, 291 Mo. 351, 237 S.W. 752; State ex rel. State Bldg. Comm. v. Smith, 335 Mo. 840, 74 S.W.(2d) 27, and State v. Cline, 118 Neb. 150, 224 N.W. 6, are to like effect as that of State v. Winnett, supra, and fully support the conclusion reached.

It appears, therefore, that the constitutional amendment was duly adopted and is valid.

■ As to the enabling act, the attack is likewise twofold, but brief discussion will

suffice. The insistence that this local act is violative of subdivision 17 of section 104 of the Constitution for the reason that it authorizes the issuance of the bonds without the vote of the qualified electors of the county is without merit. This for the reason that the constitutional amendment, first discussed, expressly empowers the Legislature to authorize this bond issue, and by said amendment the issuance of the same is taken without the influence of said section 104.

■ The second insistence as to the local act is that it was not passed pursuant to section 106 of the Constitution as to the matter of publication "once a week for four consecutive weeks." But this does not necessarily mean 28 days, as appellant appears to argue. This local act was introduced on the 25th day after its first publication, but there had been publication in a newspaper once a week for four consecutive weeks between the first publication and the introduction of the bill, thus meeting the requirements of our Constitution, though the 28 days had not intervened. Such was the holding of this court in ex parte Lower, 178 Ala. 87, 59 So. 611, re-stated in Carnley v. Moore, 218 Ala. 274, 118 So. 409.

The local act is, therefore, likewise valid.

■■ Other objections to the bond issue require but brief consideration. The fact that the proceeds of the bonds may not be paid out simultaneously with their issuance, does not serve to increase the indebtedness of the county beyond the constitutional limit. The constitutional amendment contemplated the funding of unbonded indebtedness and bonded indebtedness past due on September 30, 1936, and authorized the issuance of bonds for that purpose from time to time. The evidence shows this indebtedness is due to various parties and is in various amounts. Some of it is evidenced by warrants not yet due, and the local act makes provision for funding of this indebtedness also with the consent of the holders thereof.

It is clear, therefore, that the arrangement whereby some of the funds must remain on deposit in the bank, subject to be used in the payment of such indebtedness when maturing or earlier if agreeable, cannot be said to offend any constitutional provision as to indebtedness limitation, particularly viewed in the light of the language of this constitutional amendment and its evident purpose. And the language of this Court in Brown, Treas. v. Gay-Padgett Hardware Co., 188 Ala. 423, 66 So. 161, lends support to this conclusion.

The governing body of the county is given authority to issue these bonds in payment or exchange for the indebtedness therein referred to. The validity of the indebtedness is shown by the proof in the report of the county treasurer. The county officials are charged with the application of the proceeds of these bonds to the payment of valid claims, with severe penalties for violation of their duties in this regard, and given authority to issue the bonds for this purpose they are necessarily given like authority to determine the validity of the indebtedness or the proper application of the proceeds in accordance with the directions found in the constitutional amendment and the local enabling act. And the fact that the proceeds of the bonds might be applied to an illegal use is no answer to the issuance of the bonds, and the application of the proceeds is not a matter chargeable to the bond purchasers.

These discussions should serve as an answer to objections a, b, and c, set up in respondent's answer to the petition.

■ The fact that in section 5 of the local enabling act, the county is directed to designate the fund from which these bonds are payable in no manner affects their status as general obligations of the county, the tax supplying the fund being levied over the entire county. There is nothing in said section indicating any legislative intent that the bonds should not be a general obligation of the county; but, on the other hand, the entire act demonstrates to the contrary. This suffices for paragraph h of the answer.

■ The $150,000 school bonds were for public school buildings. We think that such a purpose may properly be said to come within the meaning of "necessary public buildings," as used in section 215 of the Constitution, and that there is nothing in Abramson v. Hard, 229 Ala. 2, 155 So. 590, which militates against this conclusion. See Phillips v. Atkins, 229 Ala. 15, 155 So. 537. Paragraph j of the answer is therefore no defense.

Moreover, this constitutional amendment expressly authorizes the Legislature to make provision also for refunding bonded indebtedness past due on September 30, 1936, and this $150,000 comes within the influence of that provision of the amendment and of the enabling act, and thus was so expressly authorized.

The local enabling act makes this bond issue subject to the provisions of the municipal bond code, which provides what the advertisement of the sale of the bonds shall contain. · Gen.Acts 1935, p. 579. It does not require that the notice should show from what funds the bonds are payable. It is insisted that the private sale made within 30 days after a failure to receive a bid on the publicly advertised sale must conform to the published sale in all respects.

■ Whatever may be said of this insistence in general, we think it clear it could not be made applicable to a feature of the advertised bid, not required by the statute, and this suffices as an answer to paragraph k.

■ Conceding the sale at par with 1 per cent. deduction for expenses would make the sale at 99 cents on the dollar, considering the fact that the municipal code provisions above referred to are applicable here, this would present no objection, as that statute authorizes as much as five per cent. deduction for such expenses.

We have considered each objection raised in the answer, and our conclusion is in harmony with that of the court below to the effect none of them present a valid objection to this bond issue, and that the peremptory writ was properly ordered issued. We think, therefore, that the judgment of the trial court should be here affirmed, and it is so ordered.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.