211 So.2d 469

Teresa M. EDMONSON

v.

Albert P. BREWER, as Governor, et al.

3 Div. 359.

Supreme Court of Alabama.

June 6, 1968.

Goodwyn, Smith & Bowman, Montgomery, for appellant.

Bradley, Arant, Rose & White, Wm. Alfred Rose, Ellene Winn, Wm. M. Slaughter and James H. White, III, Birmingham, for appellees.

**338**

HARWOOD, Justice.

Act No. 272 adopted at the 1967 Regular Session of the Legislature of Alabama, provided for the submission to the voters of this state of a Constitutional Amendment in an election to be held on a day specified.

The proposed amendment authorizes the state acting through a bond commission composed of the Respondents (the Governor of Alabama, the Finance Director, and the Director of Conservation) to sell bonds in the amount of $43,000,000 for the purpose of acquiring, developing, and equipping parks and park facilities in the state.

This amendment will hereinafter be referred to as the "Parks" amendment.

In an election held on 5 December 1967, the amendment was approved by the voters, 62,650 votes being in favor of the adoption of the amendment and 29,125 votes against its adoption. The results of the election being duly canvassed and certified as required by law on 13 December 1967, the Governor on that day proclaimed the amendment ratified.

In March 1968, Teresa Edmonson, as a citizen and taxpayer of Alabama, in her own behalf, and in behalf of all other citizens and taxpayers of this state, filed a declaratory proceeding in equity in the Circuit Court of Montgomery County seeking to have the amendment declared invalid.

The bill alleges two defects which allegedly renders the amendment invalid:

1. That the proclamation notice of the election was not published in a newspaper of Jefferson County preceding the election as required by Section 284 of the Alabama Constitution, as amended, and also as required by Act No. 272 itself which provided that notice of the proposed amendment should be given by proclamation of the Governor and published once a week for four successive weeks next preceding the election day in a newspaper published in each county, or by posting a copy of the proclamation notice at each courthouse and post office in every county in which no newspaper is published.

We note here that Section 284 of our Constitution, as amended, provides, as to publication of the proclamation notice of an election pertaining to proposed amendments to the Constitution as follows:

" * * * Notice of such election, together with the proposed amendments, shall be given by proclamation of the governor, which shall be published in every county in such manner as the legislature shall direct, for at least four successive weeks next preceding the day appointed for such election."

2. The second defect alleged in the bill of complaint affecting the validity of the amendment is that the proposed amendment is so vague and uncertain as to be rendered unconstitutional, in that, it specially pledges for the pay-

ment of interest and principal on said bonds to be issued by the bond commission (Governor, Finance Director, and Conservation Director) a portion of the proceeds of an additional privilege and license tax on the sale, storage, use, and consumption of cigarettes "levied by an Act introduced at the 1967 Regular Session of the Legislature of Alabama as Senate Bill 280", which tax was appropriated in said Act to the development of state parks and park facilities, and said Senate Bill 280 was never enacted by the legislature.

The cause was submitted below on an agreed statement of facts. In appellant's brief this agreed statement of facts has been summarized as follows:

"1. The 'Parks' Amendment authorized the State to sell and issue bonds not exceeding $43,000,000 in the aggregate principal amount for the purpose of acquiring, providing, constructing, developing and equipping State Parks and park facilities.

"2. On October 9, 1967, the Governor of the State issued a proclamation setting forth the 'Parks' Amendment and giving notice that an election would be held in the State on December 5, 1967 on the question of whether the 'Parks' Amendment should be adopted.

"3. On October 16, 1967, the Governor mailed a copy of her proclamation to a newspaper published in each of the sixty-seven (67) counties of the State, along with a letter requesting that said proclamation be published in that newspaper once a week for the four successive weeks preceding the election.

"4. The newspaper designated by the Governor for the publication of the notice proclamation in Jefferson County was the 'Shades Valley Sun.' That newspaper received the Governor's proclamation with the accompanying letter, and acknowleged receipt of both documents, but, as the result of a 'clerical error,' completely failed to publish said proclamation.

"5. The election on the 'Parks' Amendment was held on December 5, 1967 in each county of the State, at which time the 'Parks' Amendment was submitted to and voted upon by the electors of the State. The votes cast therein were canvassed, tabulated and returns thereof made to the Secretary of State. On December 13, 1967, the returns were counted, and it appeared from said count that a majority of the qualified electors voting in said election had voted in favor of the amendment, with the vote being 62,650 votes for the amendment and 29,125 votes against it. Whereupon, the Governor issued a proclamation proclaiming that said amendment was valid and a part of the Constitution of Alabama.

"6. On December 5, 1967, the date of the election, there were 241,045 registered and qualified electors in Jefferson County. Only 12,772 of said electors voted on the 'Parks' Amendment, with 9,831 voters voting in favor of said amendment and 2,941 against it.

"7. Approximately 4,000 copies of newspapers published outside Jefferson County, which contained copies of the proclamation, were circulated in Jefferson County during the four weeks preceding the date of the election.

"8. Extensive publicity was given, during the weeks preceding the election, to the 'Parks' Amendment in the Birmingham News and the Birmingham Post Herald, and over three television stations and ten radio stations, all located in Jefferson County.

"9. Dr. David C. Hurst, an expert statistician holding the position of Chairman of the Department of Biostatistics at the University of Alabama in Birmingham, evaluated and analyzed the voting patterns in Jefferson County and in the State as a whole in the special statewide election held on the sixteen proposed constitutional amendments submitted to the electorate of the State on December 5, 1967, to determine whether the said voting patterns gave

any statistically significant indications that the participation of the electors in Jefferson County in the said election was affected by the failure of the Shades Valley Sun to publish the Governor's proclamation. Dr. Hurst concluded that the said failure had no effect either (1) on the total number of electors in Jefferson County who voted in the election, or (2) on the percentage of those Jefferson County electors so voting who cast their ballots in favor of or against the Amendment.

"10. The 'Parks' Amendment specially pledges as security for the 'Park' bonds the funds to be derived from 'an additional privilege and license tax * * * levied by an Act introduced at the 1967 Regular Session of the Legislature of Alabama as Senate Bill 280. * * *' However, Senate Bill 280 was not enacted into law. Nevertheless, Act No. 309, which originated as House Bill No. 507, was enacted into law, and it was identical, both in words and figures, to the Senate Bill 280 referred to by the 'Parks' Amendment.

"11. The Appellees claiming to constitute a bond commission propose to provide for the sale and issuance of the bonds authorized by the 'Parks' Amendment, and will cause the bonds to be sold and issued unless this Court declares that the 'Parks' Amendment is invalid."

Counsel for appellees while agreeing to the above summary of the facts, has also suggested that the agreed facts also show that the method followed by the Governor in arranging for the publication of the notice of the Parks amendment was the same as used for all 16 of the amendments to be voted on in the election of 5 December 1967, and was the same method that has been followed for over 25 years by the Governors of the state in arranging for proclamations giving notice of elections on proposed amendments to the Constitution.

Further, the circulation of the Shades Valley Sun was less than 4,000 copies, mainly confined to a particular residential area in Jefferson County.

Upon completion of the hearing the lower court ordered, adjudged, and decreed that the Parks amendment was not invalid for any reasons set forth in the bill of complaint; that the said Parks amendment is a part of the Constitution of Alabama; that the State of Alabama, acting through the bond commission constituted in the Parks amendment had lawful authority to issue and sell the bonds authorized in the amendment; and that said bonds will be general obligations of the State additionally secured by a special and irrevocable pledge of so much as may be necessary of the additional privilege and license tax levied by Act No. 309, adopted at the 1967 Regular Session of the Legislature of Alabama.

The complainant below perfected this appeal from said decree.

We first consider whether the failure to publish in Jefferson County the proclamation giving notice of the Parks amendment rendered the statewide election on, and approval of said amendment, invalid in view of the provisions of Section 284 of our Constitution, as amended, and the provisions of Act No. 272, supra, as to the publication of the notice.

■ As to compliance with constitutional and statutory provisions pertaining to notice of elections, it is apparent from our decisions that in case of *local elections* called by local governing bodies, strict compliance with such provisions is required. See McAdams v. Ne Smith, 252 Ala. 178, 40 So.2d 84; State ex rel. Jackson v. Town of Boyles, 214 Ala. 538, 108 So. 590; Shanks · v. Winkler, 210 Ala. 101, 97 So. 142; Bouldin v. City of Homewood et al., 277 Ala. 665, 174 So.2d 306; City of Birmingham v. Bouldin, 280 Ala. 76, 190 So. 2d 271.

■ On the other hand, our decisions pertaining to statewide elections on constitutional amendments have consistently held that substantial compliance with the constitutional and statutory provisions rela-

tive to notice of such elections is sufficient.

In fact in City of Birmingham v. Bouldin, supra, it was specifically pointed out that " * * * as to elections on amendments to the Constitution, we follow the substantial compliance doctrine."

In Doody v. State ex rel. Mobile County, 233 Ala. 287, 171 So. 504, the Governor's proclamation giving notice of the election on a proposed constitutional amendment was published in every county except Walker County, where there was a total failure to publish the proclamation. The amendment was adopted by a majority of the electors in excess of the total number of the qualified electors in Walker County.

The court upheld the validity of the amendment on the ground that there had been a substantial compliance with the constitutional requirements for publication. However, the true doctrine of this decision is clouded by the court's statement that since the amendment was adopted by the voters of the state by a majority in excess of the total vote of Walker County, the purpose of the publication was fully served and the result of the election could not have been affected by the omission to publish the proclamation in Walker County, the court terming such omission an "unimportant accident."

In an advisory opinion, In re Opinion of the Justices, 254 Ala. 166, 47 So.2d 643, Justice Lawson, in a special concurring opinion, observed as to Doody, supra:

"True, in the Doody case, supra, it appeared that the proposed amendment there under consideration was adopted by the voters of the state by a majority considerably in excess of the total vote of Walker County. That situation does not appear in the matter presently under consideration.

"However, I do not think this factor controlling as to whether or not there has been a substantial compliance with

the requirements of Sec. 284 of the Constitution of 1901, as amended.

\* \* \* \* \* \*

"In Doody v. State ex rel. Mobile County, supra, reliance was had upon the case of State ex rel. Thompson v. Winnett, 78 Neb. 379, 110 N.W. 1113, 10 L.R.A., N.S., 149, 15 Ann.Cas. 781, which was said to be a case much in point.

\* \* \* \* \* \*

"It does not appear that the Nebraska court based its conclusion on the fact that the result of the election in the state could have been affected by the total vote of the county in which the publication of the notice of the election was not had in strict compliance with the constitutional provision."

In Swaim v. Tuscaloosa County, 267 Ala. 509, 103 So.2d 769, the court considered the validity of a constitutional amendment where the Governor's proclamation notice had not been timely published in Bibb, Macon, and Mobile counties for at least four successive weeks next preceding the day appointed for the election as required by Section 284 of the Constitution, as amended. The amendment was not passed by a majority of the electors of the state in excess of the total number of qualified voters in the three above named counties.

The court held, however, that there had been a substantial compliance with the constitutional requirement for publication of the notice and that the defective publication of the notice in Bibb, Macon, and Mobile counties could not reasonably be said to have affected the outcome of the election.

The effect of Swaim, supra, is to dispel the uncertainty of the language of Doody, supra, as to whether the applicability of the doctrine of substantial compliance is conditioned upon a mathematical certainty that the outcome of the election was, or was not, affected by a faulty publication.

*Swaim,* supra, was approved in Opinion of the Justices, 267 Ala. 666, 104 So.2d 696, wherein a majority of the Justices opined that a failure to set out a portion of a proposed constitutional amendment in the notice of the election as the same was published in sixty of our sixty-seven counties, did not invalidate the amendment.

The portion of the proposed amendment omitted from the published notice in sixty counties contained an authorization for the issuance by Mobile County of $3,-000,000 in bonds, and stated the purposes for which the proceeds of the bond issue were to be used. This certainly was an important provision of the proposed amendment.

A majority of the Justices were of the opinion that despite the omission in the notice of the portions referred to in the notices as published in sixty of the counties, there was yet a substantial compliance with the provisions of Section 284 of the Constitution, as amended, and that:

"In this situation, would it not be reasonable to assume that if an elector favored adoption of an amendment permitting Mobile County to issue an unlimited amount of bonds for school building purposes, he would also favor the adopting of an amendment limiting the issuance of bonds to $3,000,000 for the same purpose?"

It would appear that the doctrines of our cases requiring a strict adherence to the Constitutional and statutory directives in considering local elections, and the more liberal rule of substantial compliance when considering elections pertaining to elections for the adoption of constitutional amendments, are based upon sound and logical grounds supporting the distinction between the two types of elections.

In local elections defects in the procedures looking toward an election can be speedily remedied by local officials by starting the election processes anew if necessary.

Statewide elections looking toward adoption of constitutional amendments can only be initiated by the legislature which meets in regular sessions only every two years.

Statewide publication in every county of the proclamation notices increases by 67 the possibility of errors in such publications.

Actually, newspaper proprietors occupy no official office, and are under no legal duty to publish the notices. Economic benefit from publishing the notices is the only assurance that such notices will be published.

In view of the possibility of errors in publishing in 67 counties the notices of an election on proposed constitutional amendments, a requirement of literal compliance would result, as a practical matter, in a sacrifice for the sake of procedural perfection of the fundamental constitutional right of permitting the people to change their Constitution.

This principle has been cogently stated by the Court of Civil Appeals of Texas in Whiteside v. Brown, 214 S.W.2d 844, in the following language:

"Certain it is that the framers of our Constitution did not intend to provide for and to preserve to the people the fundamental right of amending or changing the Constitution and at the same time to surround the exercise of this right with restrictions which would permit one private publisher to bring about the defeat of a constitutional amendment approved by the people, by the simple expedient of failing or refusing to publish notice of the election as required by the Constitution."

■ Without reiterating the facts of these proceedings which have been set out in detail above, we hold that under these facts there has been a substantial compliance with the requirements of Section 284 of our Constitution, as amended, in publication of the proclamation notice

of the election on the amendment now being considered

We come now to the question of the effect of the provision in the proposed amendment making the bonds to be issued general obligations of the state, and pledging additionally for payment thereof so much as may be necessary of that portion of an additional privilege and license tax on the use, sale, etc., of cigarettes, *"levied by an act introduced at the 1967 Regular Session of the Legislature of Alabama as Senate Bill 280,* that was appropriated in said Act to the development of state parks and state park facilities."* (Italics ours.)

Senate Bill 280 was introduced in the Senate on 20 June 1967, but Senate Bill 280 was never enacted as a law.

On 29 June 1967, there was introduced in the House as House Bill No. 507, a bill in all respects identical with Senate Bill 280. House Bill 507 was passed by both houses of the legislature and approved by the Governor and appears as Act 309 of the 1967 Regular Session of the Legislature. (See 1967 Acts of Alabama, Regular Session, p. 850.)

Act 309, supra, levies an additional sales and use tax on cigarettes and provides that the proceeds from such tax shall be used for certain state park purposes including "land acquisition, equipment purchases, capital additions or improvements * * * relating to the State Division of Parks, Monuments and Historical Sites." Senate Bill 280, if enacted, would have done the same thing.

This court judicially knows that Act No. 309, which levies an additional use and sales tax on cigarettes for state park purposes, which purposes are the same for which the bonds are authorized, is the only Act of the 1967 Regular Session of the Legislature which is mutually complementary to the Parks admendment. Act 309 could have no effective field of operation unless it complements the Parks amendment.

■ The cardinal rule in interpretating constitutional and legislative provisions, to which all other rules are subordinate, is that the court must ascertain and give effect to the true legislative intent. In re Opinion of the Justices, 267 ·Ala. 114, 100 So.2d 681; Touart v. American Cyanamid Co., 250 Ala. 551, 35 So.2d 484; Broaddus v. Johnson, 235 Ala. 314, 179 So. 215.

■ We think it abundantly clear from the language of the Parks amendment and of Act No. 309, that the intent of the legislature was to pledge specially a portion of the additional sale and use tax on cigarettes as additional security for the payment of the interest and principal on the state parks bonds to be authorized in the event the Parks amendment was approved.

The fact that Senate Bill 280 was mentioned in the proposed amendment, we consider of little import, since the language of the amendment and Act 309, clearly shows the intent of the legislature.

As a matter of fact, the reference to a pending bill is an ephemeral reference at best since only an Act has validity, while a bill before passage by both houses of the legislature is nothing more than evidence of an intention or effort. Only when a bill is passed does it become a legislative fact.

Further, we do not believe that any voter would be influenced by the numerical designation of a bill where it is clear from the language of the proposed amendment that the intent of the legislature in submitting the amendment was to pledge a portion of a sales and use tax on cigarettes as additional security for the payment of the bonds to be issued under the authority of the Parks amendment.

The Parks amendment was approved statewide by a vote of 62,650 in favor of the adoption of the amendment, 29,772 against its adoption, a ratio better than 2 to 1 in favor of the adoption of the amendment. In Jefferson County the vote in

**344**

favor of the adoption of the amendment was 9,831, while 2,941 votes were cast against it—a ratio of better than 3 to 1 in favor of the adoption of the amendment.

 Without doing violence to deductions from these results, we do not think it can be reasonably assumed that the results of the vote on the Parks amendment was affected by the erroneous reference to Senate Bill 280.

The decree of the lower court is due to be affirmed, and it is so ordered.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.