**OPINION OF the JUSTICES of the Supreme Judicial Court Given Under the Provisions of Section 3 of Article VI of the Constitution.**

Questions Propounded by the Governor on Jan. 5, 1970.

Supreme Judicial Court of Maine.

Answered Jan. 12, 1970.

---

## LETTER PROPOUNDING QUESTIONS

*State of Maine*

*Executive Department*

*Augusta, Maine*

KENNETH M. CURTIS
    GOVERNOR

January 5, 1970

To the Honorable Justices of the Supreme Judicial Court:

Under and by virtue of the authority conferred upon the Governor by the Constitution of Maine, Article VI, Section 3, being advised and believing that the questions contained herein are important questions of law and that it is a solemn occasion,

I, Kenneth M. Curtis, Governor of Maine, submit the following statement of facts and questions of law and respectfully ask opinion of the Justices of the Supreme Court thereon:

### STATE OF FACTS

The Constitution of Maine, Article IX, Section 14 contains the following pertinent language in the last sentence thereof:

"Whenever ratification by the electors is essential to the validity of bonds to be issued on behalf of this State, the question submitted to the electors shall be accompanied by a statement setting forth the total amount of bonds of the State outstanding and unpaid, the total amount of bonds of the State authorized and unissued, the total amount of bonds of the State contemplated to be issued if the enactment submitted to the electors be ratified."

In accordance with acts and resolves passed by the 104th Legislature certain bond issues were submitted to the people of the State of Maine on November 4, 1969 for ratification. The statement of bonded indebtedness required by the above reference constitutional language did not include the amounts of bonds permitted to be issued under Sections 14–A and 14–B of Article IX of the Constitution of Maine and under the provisions of Section 2 of Article VIII of the Constitution of Maine. No bonds have been issued under any of the reference provisions. A copy of the referendum questions and proposed constitutional amendments including a statement of bonded indebtedness prepared by the Secretary of State is attached hereto as Exhibit A.

The people of the State of Maine at the November 4, 1969 election ratified 6 bond issues. Certain of these bond issues have been submitted to bid. Bids will be opened on January 6, 1970 and awards will be made on that date. Bonds are to be dated pursuant thereto on January 15, 1970 and delivered in New York, New York on January 22, 1970.

Bond counsel has, however, requested the State of Maine to delay issuance of

bonds pursuant to the bid and in addition has stated that it is his opinion that because the amounts of bonds represented by Sections 14–A and B of Article IX of the Constitution of Maine and by Section 2 of Article VIII of the Constitution of Maine were not included in the statement of bonded indebtedness that the bond issues approved at the November 4, 1969 election may be invalid. A copy of the letter of bond counsel dated December 31, 1969 is attached hereto as Exhibit A–1.

The position of bond counsel, in addition to raising serious constitutional questions, with their accompanying jeopardy to the financial structure to the State of Maine, also has serious implications with respect to previous bond issues.

Since November 8, 1966, the statement of bonded indebtedness required by the last sentence of Section 14 of Article IX of the Constitution has not included the amount of bond issues contemplated by Sections 14–A, 14–B of Article IX or Section 2 of Article VIII. The referendum questions and proposed constitutional amendments, including a statement of bonded indebtedness, prepared by the Secretary of State for the elections of November 8, 1966; September 12, 1967; November 7, 1967; June 17, 1968 and November 5, 1968 are attached hereto as Exhibits B, C, D, E and F. Bonds have been issued for the various purposes expressed in the foregoing exhibits.

If the position of bond counsel is correct as respects the bond issues ratified by the people at the November 4, 1969 election then the validity of the foregoing bond issues is similarly seriously jeopardized.

Previous to November 8, 1966 and after and including September 9, 1957, at which election Section 14–A was approved by the people the statement of bonded indebtedness required by the last sentence of Section 14 of Article IX of the Constitution did include either specifically or by inclusion in a general amount, amounts of bonds referred to in Sections 14–A or B of Article IX of the Constitution of Maine. Copies of referendum questions and proposed constitutional amendments which include statement of bonded indebtedness, for the elections of September 9, 1957; October 12, 1959; October 10, 1961; June 18, 1962; November 5, 1963; November 3, 1964; November 2, 1965 and June 20, 1966, are annexed hereto as Exhibits G, H, I, J, K, L, M, N and O.

In order to determine whether bids may properly be awarded for bonds on January 6, 1970 and bonds issued, the Governor should be informed as to whether the bonds authorized to be issued by the people of the State of Maine at the November 4, 1969 election will be valid. In addition, he should be properly informed as to whether previous bond issues which omitted from the statement of bonded indebtedness the amounts of bonds contemplated by Sections 14–A and B of Article IX of the Constitution of Maine and by Section 2 of Article VIII of the Constitution of Maine are valid.

Therefore, I respectfully request an answer to the following questions:

## QUESTIONS OF LAW

1. Does the last sentence of Section 14 of Article IX of the Constitution of Maine require that whenever ratification by the electors is essential to the validity of bonds to be issued on behalf of the State, that the amounts of bonds contemplated by Sections 14–A and 14–B of Article IX of the Constitution of Maine and Section 2 of Article VIII of the Constitution of Maine, must be included in the summary of bonded indebtedness as bonds authorized and unissued?

If the answer to Question 1 is in the affirmative, what is the status of bonds authorized and issued on and after November 8, 1966?

Sincerely,
/s/ Kenneth M. Curtis
Governor

KMC:1h

ANSWERS OF THE JUSTICES

To The Honorable Kenneth M. Curtis, Governor of Maine:

In compliance with the provisions of Section 3 of Article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following answers to the questions propounded on January 5, 1970. QUESTION 1 (Part 1). Does the last sentence of Section 14 of Article IX of the Constitution of Maine require that whenever ratification by the electors is essential to the validity of bonds to be issued on behalf of the State, that the amounts of bonds contemplated by Sections 14–A and 14–B of Article IX of the Constitution of Maine and Section 2 of Article VIII of the Constitution of Maine, must be included in the summary of bonded indebtedness as bonds authorized and unissued?

ANSWER: The last sentence of Section 14 of Article IX of the Constitution provides as follows:

"Whenever ratification by the electors is essential to the validity of bonds to be issued on behalf of the State, the question submitted to the electors shall be accompanied by a statement setting forth the total amount of bonds of the State outstanding and unpaid, the total amount of bonds of the State authorized and unissued, and the total amount of bonds of the State contemplated to be issued if the enactment submitted to the electors be ratified."

■ The manifest purpose of that sentence of Section 14 is to provide the electors with information with respect to the present and potential debt status of the State at the moment when they are called upon to decide whether or not to approve the issuance of bonds initiated by the Legislature. Even though bonds authorized by the Legislature under Sections 14–A and 14–B stand in a peculiar category in that they are to be issued only upon certain contingencies which may never occur, they are by virtue of the constitutional provisions (implemented in the case of 14–A by legislative action in 10 M.R.S.A. Sec. 802 and in the case of 14–B by 10 M.R.S.A. Sec. 6002) "authorized but unissued."

Issuance of bonds under Sec. 2 of Article VIII will be upon direct authorization of the Governor and Council without the necessity of legislative authorization. The Legislature has implemented the provisions of Section 2 of Article VIII by its enactment of 20 M.R.S.A. Sections 2231 to 2236 inclusive, but no bonds under Section 2 of Article VIII have thus far been authorized or issued by the Governor and Council.

■ Thus the information with respect to 14–A and 14–B bonds should have been included as part of the election procedure of November 4, 1969 (and any prior elections where the omission occurred). Doubtless if proceedings had been seasonably instituted prior to any such election, the revision of the informational material would have been judicially compelled, "but the general rule is that every reasonable intendment will be indulged in favor of the validity of a constitutional amendment after its ratification by the people at the polls." State v. Alderson (1914) 49 Mont. 387, 142 P. 210, 216.

QUESTION 1 (Part 2). If the answer to Question 1 is in the affirmative, what is the status of bonds authorized and issued on and after November 8, 1966?

■ ANSWER: Even though constitutional provisions prescribing detailed procedural steps in submission of a bond resolution to the electors must be deemed "mandatory" in the sense that there is no discretionary right to vary the procedure, courts under appropriate conditions may properly and do consistently determine whether or not there has been "substantial compliance" with such provisions. Arnett v. Sullivan (1939) 279 Ky. 720, 132 S.W.2d 76. The rule has frequently been applied with respect to mandatory notice and pub-

lication requirements, the purpose thereof being informational as is the listing requirement in Section 14. In State v. Alderson (supra) the court in such a case pointed out that the will of the people could be thwarted and absurd consequences could flow from insistence on literal compliance. "So long as human agencies are to be employed in carrying out the constitutional scheme of amendment, slight errors and defects in procedure are certain to occur, and to impose the rule of literal compliance would, for all practical purposes, render the adoption of any amendment absolutely impossible and defeat one of the very purposes of the Constitution itself." See also Edmonson v. Brewer (1968) 282 Ala. 336, 211 So.2d 469. The rule has equal applicability to the approval of bonds by referendum vote.

■ The credit of the State of Maine is directly involved. The validity of its bond obligations should not be made to depend upon literal compliance with the informational requirements where no substantial injury has been shown or is likely to occur. The informational requirement in Section 14 is vulnerable to human error whether in compilation, arithmetical computation or printing, and invalidation should occur only if there is a lack of "substantial compliance."

"The Courts are slow to strike down either the legislative proceedings or the election incident to the adoption of a constitutional amendment, and will indulge every reasonable presumption in favor of their validity. As was said in State ex rel. Corry v. Cooney, 70 Mont. 355, 225 P. 1007, 1009: 'The question is not whether it is possible to condemn the amendment, but whether it is possible to uphold it, and we shall not condemn it unless in our judgment its nullity is manifest beyond a reasonable doubt.'" Tipton v. Smith (1956) 229 S.C. 471, 93 S.E.2d 640 [quoted with approval in Watts v. Oliphant (1965) 246 S.C. 402, 143 S.E.2d 813, 815].

■ We have no hesitation in saying that there was substantial compliance with Section 14 with respect to the approval of bond issues by the electors on and after November 8, 1966. No bonds have been issued pursuant to Sections 14–A and 14–B. Whether or to what extent any such bonds will ever have to be issued cannot now be known. The requirement of issuance is contingent upon the occurrence of several events, the economic failure of the borrower, the inadequacy of insurance funds in the hands of the Authority, and the inadequacy of funds in the State Contingent Account available to supplement the insurance funds. Only when and to the extent that these resources are inadequate to protect the lending agency will any bonds ever be issued. There is great unlikelihood that all or even a substantial portion of the potential contingent liability of the State as an insurer will be translated into absolute liability. We are satisfied that the risk of injury from lack of information with respect thereto is insignificant when weighed against the certainty that the credit of the State and its ability to finance essential public services will be seriously impaired and undermined if doubt is cast upon the validity of bonds heretofore approved by the electors. We are satisfied that such bonds, unless suffering from some other legal infirmity not presently apparent, are and will be valid and enforceable obligations of the State of Maine.

Dated at Augusta, Maine, this 12th day of January, 1970.

Respectfully submitted:

ROBERT B. WILLIAMSON

DONALD W. WEBBER

HAROLD C. MARDIN

ARMAND A. DUFRESNE, Jr.

RANDOLPH A. WEATHERBEE

CHARLES A. POMEROY