562 So.2d 503 (1990)
Rubye A. NORTON
v.
MOBILE COUNTY, et al.
88-312.
Supreme Court of Alabama.
March 23, 1990.
*504 Mark Ezell, Butler, and John W. Sharbrough, Mobile, for appellant.
Merceria Ludgood, Mobile, for appellees Mobile County and Mobile County Comm'n.
James C. Wood and J. Randall Crane, Mobile, for appellee Lionel W. Noonan, Probate Judge.

ON APPLICATION FOR REHEARING
PER CURIAM.
This Court's original opinion of September 29, 1989, is withdrawn and the following is substituted therefor.
The plaintiffs appeal a summary judgment entered in favor of the defendants. We affirm.
The issues are whether Act 87-616, Alabama Acts of 1987, is a local act that applies only to Mobile County or is a general act that applies statewide; whether the $10 surcharges on the recordation of deeds and mortgages in Mobile County are "costs and charges of court" as prescribed in § 96 of the Alabama Constitution of 1901; and whether the Act was properly published.
The $10 surcharge at issue was established by Act 87-616.[1] The plaintiff, Rubye A. Norton, filed a deed in the Mobile County Probate Court and was assessed the $10 surcharge. She then filed a class action, challenging the constitutionality of the Act and naming Mobile County, the Mobile County Commission, and the Judge of Probate of Mobile County as defendants. The class was certified by the circuit court and, subsequently, a summary judgment was entered for all the defendants.
The plaintiffs challenged the constitutionality of Act 87-616 on numerous grounds. We discuss them as follows:

I. Is Act 87-616 a local law or a general law?

Amendment No. 397 of the Alabama Constitution of 1901 defines "general law" and "local law" as follows:
"A general law is a law which in its terms and effects applies either to the whole state, or to one or more municipalities of the state less than the whole in a class. A general law applicable to such a class of municipalities shall define the class on the basis of criteria reasonably related to the purpose of the law, provided that the legislature may also enact and change from time to time a general schedule of not more than eight classes of municipalities based on population according to any designated federal decennial census, and general laws for any purpose may thereafter be enacted for any such class. Any law heretofore enacted which complies with the provisions of this section shall be considered a general law.
"No general law which at the time of its enactment applies to only one municipality of the state shall be enacted, unless notice of the intention to apply therefor shall have been given and shown as provided in section 106 of this Constitution for special, private or local laws; provided, that such notice shall not be deemed to constitute such a local law.
"A special or private law is one which applies to an individual, association or corporation. A local law is a law which is not a general law or a special or private law."
*505 When a dispute arises over whether a law is local or is general in nature, a court is obligated, when possible, to read the law as a general one. State ex rel. Montgomery v. Merrill, 218 Ala. 149, 152, 117 So. 473 (1928). If a statute may be read to apply, in some way, to the "entire state in some of its chief features," it will be considered a general law. State ex rel. Collman v. Pitts, 160 Ala. 133, 134, 49 So. 441, 442 (1909). However, an act that was clearly intended to apply to a single county must be construed as a local act. Opinion of the Justices No. 197, 284 Ala. 626, 227 So.2d 396 (1969). Act 87-616 clearly applies to Mobile County only and is, therefore, a local act.

II. Are the $10 surcharges "costs and charges of court, or fees, commissions, or allowances of public officers?"
Article IV, Section 96, Constitution of Alabama of 1901, reads as follows:
"The legislature shall not enact any law not applicable to all the counties in the state, regulating costs and charges of courts, or fees, commissions or allowances of public officers."
Because we have already determined that Act 87-616 is "not applicable to all counties in the state," we must decide whether the surcharge falls within the term "costs and charges of court" as that term is used in § 96. The cardinal rule in construing statutory language is to ascertain the legislative intent. Gulf Coast Media, Inc. v. Mobile Press Register, Inc., 470 So.2d 1211 (Ala.1985). Therefore, to construe § 96 we turn to the proceedings of the Constitutional Convention of 1901. Section 96, as originally proposed, read:
"The legislature shall not enact any law for one or more counties not applicable to all the counties in the state, increasing the uniform charge for the registration of deeds and conveyances or regulating costs and charges of courts, or fees, commissions or allowances of public officers."
2 Official Proceedings, Constitutional Convention of 1901, p. 2643 (Wetumpka Printing Co.1940). (Emphasis added.)
It is significant that the portion of the proposed section which prohibited the legislature from enacting local legislation "increasing the uniform charge for registrations of deeds and conveyances" was specifically struck out of the final draft of § 96 by an amendment proposed by Mr. Oates of Montgomery. It is, therefore, clear that the intent of the framers of § 96 was to specifically except charges for the recordation of deeds and conveyances from the prohibitive effect of the section.
We find further support for this construction of § 96 in Opinion of the Justices No. 154, 264 Ala. 181, 86 So.2d 1 (1956). In that opinion, this Court addressed the constitutionality of a proposed bill that would have required a $1 recording fee on all instruments filed in the Mobile County Probate Office "affecting the title to real and personal property." This Court opined that such fees would not be "costs and charges of court" and stated the following:
"Fees collected for the recording of instruments in the office of the judge of probate are entirely unconnected with litigation and the act of recording instruments in that office does not involve the exercise of a judicial function."
264 Ala. at 182, 86 So.2d at 3.
Although advisory opinions are not binding on this Court, In re Opinion of the Justices, 209 Ala. 593, 594, 96 So. 487 (1923), we feel that the language used by the Court there is very persuasive in this case because the fee discussed in Opinion of the Justices No. 154 was so similar to the fee authorized by Act 87-616.
We are of the opinion that § 96 of the Alabama Constitution does not prohibit the legislature from authorizing, by a local act, a surcharge such as we have under consideration here. The framers of the Constitution specifically struck from proposed § 96 the provision that would have prohibited this legislative action.
Based upon the foregoing, we hold that the $10 surcharges of Act 87-616 are not *506 "costs and charges of court." Because the surcharges go to the county treasury and to no public officer, it is clear that they are not "fees, commissions or allowances of a public officer."[2] Therefore, Act 87-616 is not a local act prohibited by § 96 of the Constitution of 1901.

III. Did the legislature comply with the publishing requirements?

Article IV, § 106, Alabama Constitution of 1901, states that no local law may be passed unless notice has been given (in the county that the law will affect); and the notice must state "the substance of the proposed law" and must be "published at least once a week for four consecutive weeks." The plaintiffs argue that the substance of Act 87-616, as advertised, was materially different from its enacted form and they point out that only 16 days passed from the first day of advertisement until introduction of the bill.
a. Was there a material difference between the Act as published and as enacted?
The versions of Act 87-616 as advertised in the Mobile Press Register and as enacted are as follows:
As Advertised "Section 1. The Judge of Probate of Mobile County is hereby mandated to charge an additional ten ($10.00) dollar fee for each and every document or instrument filed in the Probate Court of Mobile County, Alabama."
As Enacted "Section 1. The Judge of Probate of Mobile County shall assess an additional surcharge at the rate of $10.00 per instrument for all documents submitted for recordation in Probate Court which are subject to a deed or mortgage tax."
To determine whether the substance of an act has been materially altered from the date of advertisement to the date of enactment, this Court has stated the following:
"To accomplish these objects section 106 of the Constitution requires that the substance of the act must be published in advance. It cannot have the desired effect if the publication states details of substantive features different materially from the act as passed. If the details are not published but only the general nature of its substantive features, the public is put upon inquiry as to such details, and bound by a failure to inform itself, continuing through such changes and amendments as may stay within such substantive features as published. But if the publication gives details, the public need not pursue the inquiry further in respect to such details; for the information is complete, and it has the constitutional right to assume that such details will not be materially changed throughout the journey of the bill to its final passage and approval."
State ex rel. Wilkinson v. Allen, 219 Ala. 590, 592-93, 123 So. 36 (1929).
In its order entering summary judgment, the trial court held as follows:
"The advertised version put all citizens including those who may have occasion to offer other documents for recordationon notice that legislation was proposed which could effect an increase in the fees charged in Mobile County Probate Court. The collector (the probate judge) and the amount of the collection *507 ($10.00) remained unchanged. The amended version of the law merely narrowed the scope and changed the definition of the local assessment from a `fee' to a `surcharge.' Applying the principles of Fuller [v. City of Cullman], [240 Ala. 309, 199 So. 2 (1940)] the `substance' of § 106 requiring that those affected by the law be informed of its pending introduction was met."
We agree with the trial court's interpretation. Therefore, we hold that there was not a material change in the substance of the Act.
b. Were the § 106 time requirements for publishing met?
"Section 106. No special, private, or local law shall be passed on any subject not enumerated in section 104 of this Constitution, except in reference to fixing the time of holding courts, unless notice of the intention to apply therefor shall have been published, without cost to the state, in the county or counties where the matter or thing to be affected may be situated, which notice shall state the substance of the proposed law and be published at least once a week for four consecutive weeks in some newspaper published in such county or counties or if there is no newspaper published therein, then by posting the said notice for two consecutive weeks at five different places in the county or counties prior to the introduction of the bill; and proof that said notice has been given shall be exhibited to each house of the legislature through a certification by the clerk of the house or secretary of the senate that notice and proof was attached to the subject local legislation and the notice and proof shall be attached to the original copy of the subject bill and shall be filed in the department of archives and history where it shall constitute a public record. The courts shall pronounce void every special, private, or local law which the journals do not affirmatively show was passed in accordance with the provisions of this section." (Emphasis supplied.)
Art. IV, § 106, as amended by Amendment No. 341.
Was Act 87-616, Alabama Acts of 1987, properly published before it was adopted? Notice of intention to introduce the bill that became Act 87-616 was required to be published "at least once a week for four consecutive weeks in some newspaper published in [Mobile County]."
The publication appeared in a newspaper published in Mobile County on Saturday, June 20, and on the following three Mondays: June 22, June 28, and July 5.
In Black's Law Dictionary 1429 (5th ed. 1979), "week" is defined as: "A period of seven consecutive days of time; and, in some uses, the period beginning with Sunday and ending with Saturday."
The first two definitions of "week" in The American Heritage Dictionary of the English Language (1969) are "[a] period of seven days" and "[a] seven-day calendar period especially one starting with Sunday and continuing through Saturday."
In Ronkendorff v. Taylor's Lessee, 4 Pet. 349, 361, 29 U.S. 349, 7 L.Ed. 882 (1830), the United States Supreme Court held: "A week is a definite period of time commencing on Sunday and ending on Saturday."
In the Ronkendorff case, the words of the law requiring publication were "once a week" for a certain number of consecutive weeks. The Court held that a publication on "Monday, January the 6th, and omitted until Saturday, January the 18th, leaving an interval of eleven days" was sufficient and complied with the requirement of consecutive weekly publications.
The case at issue is the mirror image of Ronkendorff, supra. The publication on Saturday, June 20, was a publication in one week, and the publications on the following three Mondays, June 22, June 28, and July 5, were publications in the three following consecutive weeks, for a total publication of "once a week for four consecutive weeks."
In Ex parte Lower, 178 Ala. 87, 59 So. 611 (1912), this Court held:

*508 "After consideration, we are of opinion that the framers of the Constitution and the people, to whom the language of the Constitution was addressed when that instrument was proposed to them for adoption, intended and understood that the requirement of publication for `at least once a week for four consecutive weeks' meant one publication in each of 4 consecutive weeks, rather than a publication for 28 days."
178 Ala. at 97-98, 59 So. at 614.
The summary judgment is affirmed.
APPLICATION GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS and HOUSTON, JJ., concur.
JONES, STEAGALL and KENNEDY, JJ., concur in part and dissent in part.
JONES, Justice (concurring in part and dissenting in part).
I concur as to parts I and II of the majority opinion, but I respectfully dissent as to part III.
The original opinion (released September 29, 1989), upholding the constitutionality of Act No. 87-616, overlooked the critical language of Amendment 341 to Art. IV, § 106, Ala. Const.1901: "[T]he the notice and proof shall be attached to the original copy of the subject bill and shall be filed in the department of archives and history where it shall constitute a public record." Thus, the majority, in its original opinion, rejected the challenge to the subject bill and held that "the trial judge correctly disregarded evidence that would have impeached the journal entries, and we likewise defer to the legislative certification of compliance [with the publication requirement] and hold the act to be constitutional."
On original deliverance, the dissenting Justices accepted as evidence the "public record" on file in the Department of Archives and History, which revealed that the bill was published on June 20, 22, and 29 and July 6, 1987, but opined that 16 days between the date of the first publication of the bill and the date of its introduction was not in compliance with § 106's "once a week for four consecutive weeks" requirement, citing Code 1975, § 6-8-62(a)(4).
The majority now concedes (albeit implicitly) that the "public record" conclusively shows the dates of publication, but holds, nevertheless, that these dates of publication comply with the constitutional requisite of "once a week for four consecutive weeks," without any reference to § 6-8-62(a)(4), which provides:
"(a) When the notice is required to be given for a specified number of weeks, it must be given by consecutive weekly insertions for the number of weeks so specified. When the notice is of a proceeding to be had or of an act to be done on a specified day:
"....
"(4) If for four weeks, the first insertion must be at least 24 days before such day."
By ignoring this plain and unequivocal statutory language, the majority opinion not only overrules the longstanding precedents of case law interpreting the statute, but also, in effect, removes from the books this 94-year-old statutory method of computing the "time for publication prior to proceeding or act to be done." In the 1912 case of Ex parte Lower, 178 Ala. 87, 59 So. 611 (1912), cited and quoted from by the majority, the publication dates were February 24, March 3, 10, and 17 (seven days apart), and the introduction of the bill was March 22, 26 days after the first date of publication. Indeed, the Court of Appeals, in that same case, rested its holding of constitutionality on the fact of compliance with the 24-day requirement of the statute. Lower v. State, 3 Ala.App. 122, 57 So. 500 (1912).
I agree with the majority that, as held in Ex parte Lower, 28 days is not required; but I find no authority for the proposition that a publication on Saturday and a publication two days later on Monday comports with the constitutional term "once a week," so that these publications can be counted *509 as two of the requisite four weeks. Not only does the majority opinion approve of publications two days apart as amounting to two of the requisite four weeks, but it also approves of the one day between the date of the last publication and the date of the introduction of the bill as satisfying the requisite fourth week.
In Carnley v. Moore, 218 Ala. 274, 118 So. 409 (1928), this Court, addressing the lack of compliance with § 106's notice requirement for publication of a local act, stated:
"The act was local in its application and within the purview of section 106 of the Constitution. Was it published or posted as required by the organic law `at least once a week for four consecutive weeks,' etc.? The bill was introduced in the Senate on August 19, 1927, and the notice given was by publication in the newspaper of that county on July 29th, August 5th, August 12th, and August 19th, of the year 1927. It is insisted that the notice given was `for four consecutive weeks in the county ... prior to the introduction of the bill,' as required of a local law. Lower v. State, 3 Ala.App. 122, 57 So. 500; Ex parte Lower, 178 Ala. 87, 93, 59 So. 611; Ensley v. Simpson, 166 Ala. 366, 52 So. 61 [1909].
"The decision in the Lower Case was to the effect that the word `a' in the clause of the Constitution here pertinent is used in the sense of `in each' week, so that, when such notice was published in a newspaper or posted (as the facts warranted) once a week in each of four consecutive weeks, between the first publication and the introduction of the bill, the constitutional requirement was compiled with, although 28 days had not intervened. Our cases on the subject are collected in 40 L.R.A. (N.S.) 28. There is no evidence of the time of the day when the publication of the Enterprise Ledger was accomplished on August 19, 1927; the affidavit of the publisher as a part of the Senate Journal is uncontradicted that such was the accomplished fact when the bill was introduced in the Senate on the same day of the last publication.
"The Code of 1896 contained section 3043, defining publications for a specified number of weeks or days, and contains, among other things, the provision that, if the required notice is `for four weeks, the first insertion must be at least twenty-four days before such day'; and this requirement was carried forward as section 5184 into the Code of 1907, and as section 9260 into the Code of 1923 [currently, Ala.Code 1975, § 6-8-62(a)(4) ].... This illustrates the public policy of the state as to the required computation of time, at the period at which section 106 of the Constitution was ordained, and when the act in question was passed by the Legislature."
218 Ala. at 275, 118 So. at 410. (Emphasis in original.) Thus, the Carnley Court, finding that the bill was introduced on the 21st day after the first publication, which was also the day of the fourth publication, held that the publication violated both the statutory 24-day requirement and the constitutional "prior to the date of introduction of the bill" requirement. See, also, Opinion of the Justices No. 53, 237 Ala. 657, 188 So. 387 (1939); and Doody v. State ex rel. Mobile County, 233 Ala. 287, 171 So. 504 (1936).
Clearly, § 6-8-62(a)(4) contemplates that, at a minimum, each of the four publications will be one week apart, but that the fourth week may be shortened by four days; or, stated another way, the introduction of the bill may legally occur three days after the last publication, or even one day after the last publication, if the constitutional and statutory requisites are otherwise complied with. Absent such compliance, how could the purpose of publication, as notice to the public for its reaction to the proposed local legislation, possibly be fulfilled? In the instant case, neither the purpose of § 106 of our organic law nor the legislative intent of § 6-8-62, as recognized in our prior decisions, is being carried out by the majority's holding.
STEAGALL and KENNEDY, JJ., concur.
NOTES
[1] The Act reads in pertinent part as follows:

"Section 1. The Judge of Probate of Mobile County shall assess an additional surcharge at the rate of $10.00 per instrument for all documents submitted for recordation in Probate Court which are subject to a deed or mortgage tax.
"Section 2. These funds generated from these fees, and any interest earned thereon at any time, shall be appropriated to the Mobile County General Fund by the Judge of Probate on a monthly basis to be used for general county purposes.
"Section 3. All laws or parts of laws which conflict with this Act are hereby repealed.
"Section 4. This Act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law."
[2] Even if the surcharge could be considered to be "costs and charges of court, or fees, commissions, or allowances of public officers, Amendment 28, applicable to Mobile County, would permit such legislative action, by general or local act. Amendment 28 provides:

"The legislature of Alabama may hereafter from time to time by general or local laws, but subject to the provisions of section 281 of the Constitution of Alabama, fix, regulate and alter the costs, charges of court, fees, commissions, allowances or salaries to be charged or received by the following county officers of Mobile county, Alabama, being, the judge of probate, the tax assessor, the tax collector, the clerk of the circuit court, and the register of the circuit court, including the method and basis of the compensation of such officers."