**OPINION OF THE JUSTICES of the Su-
preme Judicial Court given under the
Provisions of Section 3 of Article VI of
the Constitution.**

**No. 677½.**

Questions Propounded by Governor Kenneth
M. Curtis in a Letter Dated
March 30, 1971.

Supreme Judicial Court of Maine.

Answered March 31, 1971.

LETTER PROPOUNDING QUESTIONS

STATE OF MAINE

OFFICE OF THE GOVERNOR

March 30, 1971

To the Honorable Justices of the
Supreme Judicial Court:

Under and by virtue of the authority conferred upon the Governor by the Constitution of Maine, Article VI, Section 3, being advised and believing that the questions contained herein are important questions of law and that it is a solemn occasion,

I. Kenneth M. Curtis, Governor of Maine, submit the following statement of facts and questions of law and respectfully ask opinion of the Justices of the Supreme Court thereon:

STATEMENT OF FACTS

The Constitution of Maine, Article IX, Section 14–A, provides that the legislature may enact legislation authorizing the insurance of payment of mortgage loans relative to industrial and manufacturing enterprises. The Constitution further authorizes the issuance of bonds on behalf of the State at such times and in such amounts as required to make payments insured as aforesaid. In accordance with this constitutional provision the legislature created the Maine Industrial Building Authority. Provisions of the law relative to the Authority are found in 10 M.R.S.A. § 701 et seq.

The legislature further provided in § 802 of Title 10 that the Governor and Council could authorize the issuance of bonds pursuant to the statute in an amount as requested but not exceeding in the aggregate at any one time the outstanding amount set forth in the Constitution of Maine Article IX, Section 14–A.

The Governor and Council by Orders dated August 26, 1970 and December 16, 1970, copies of which, together with attachments thereto, are attached hereto and made a part hereof, and marked Exhibits A and B respectively,* gave approval to the Treasurer of State to negotiate temporary loans to finance the requirements of the Maine Industrial Building Authority in anticipation of the issuance of bonds authorized by 10 M.R.S.A. § 802. The loans were negotiated by the Treasurer of State and the notes issued pursuant to the Orders are due April 1, 1971.

The reference notes were issued pursuant to Title 5 M.R.S.A. § 150 which provides by the first paragraph thereof:

"The Treasurer of State, with the approval of the Governor and Council, may negotiate a temporary loan or loans in anticipation of the issuance of bonds authorized but not yet issued, as provided by the Constitution of Maine, Article IX, section 14. Such temporary loan or loans shall be repaid from the proceeds of the bonds within one year from the date of the loan."

Since the issuance of the last reference notes pursuant to the Council Order of December 16, 1970, the Governor, the Council and the Treasurer of State have been verbally advised by the Attorney General that issuance of temporary notes to finance the requirements of the Maine Industrial Building Authority in anticipation of the issuance of bonds under 10 M.R.S.A. § 802 is not proper under the authority of 5 M.R.S.A. § 150. No formal opinion has been issued by the Attorney General.

There is presently before the Governor and Council for their consideration an order prepared by the Treasurer of State, a copy of which is attached hereto and made a part hereof, and marked Exhibit C,** proposing the issuance of further temporary notes under 5 M.R.S.A. § 150 to finance the requirements of the Maine Industrial Building Authority and specifically

* Ed. note: Exhibits not reproduced.

** Ed. note: Exhibit not reproduced.

to provide funds whereby the notes to April 1, 1971 will be paid.

The Council has not approved the issuance of bonds under 10 M.R.S.A. § 802 to provide funds to pay the notes due on April 1, 1971. The legislature has been unable to enact emergency legislation to provide funds for that purpose from the unappropriated surplus.

It is imperative that the Governor be advised as to the questions which are herein presented so that a proper decision can be made with respect to the discharge of the State's liability on the reference notes before their due date, all in order that the credit of the State not be impaired.

Therefore, I respectfully request an answer to the following questions:

## QUESTIONS OF LAW

1. Does the language of the first sentence of 5 M.R.S.A. § 150 preclude the Governor and Council from approving the negotiation of a temporary loan by the Treasurer of State in anticipation of the issuance of bonds authorized by 10 M.R.S. A. § 802 which was enacted by the Legislature by authority of Article IX, section 14–A?

2. Are the temporary notes negotiated by the Treasurer of State in anticipation of the issuance of bonds authorized by 10 M.R.S.A. § 802 which was enacted by the legislature by authority of Article IX, section 14–A, following approval by the Governor and Council on August 26, 1970 and December 16, 1970, valid?

Sincerely,

(s) Kenneth M. Curtis
Kenneth M. Curtis
Governor

## ANSWERS OF THE JUSTICES

TO THE HONORABLE KENNETH M. CURTIS, GOVERNOR OF MAINE:

In compliance with the provisions of the Section 3 of Article IV of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following answers to the questions propounded on March 30, 1971.

QUESTION 1. Does the language of the first sentence of 5 M.R.S.A. § 150 preclude the Governor and Council from approving the negotiation of a temporary loan by the Treasurer of State in anticipation of the issuance of bonds authorized by 10 M.R.S.A. § 802 which was enacted by the Legislature by authority of Article IX, section 14–A?

 ANSWER: We answer in the negative. The use of the words "as provided by the Constitution of Maine, Article IX, section 14" employed by 5 M.R.S.A., sec. 150, (P.L.1967, Ch. 417) creates an ambiguity in the light of the fact that section 14 nowhere expressly provides for the making of temporary loans to be paid out of the proceeds of bonds. The reference thus could not have been intended as expressing a source of express authority for the power exercised by the statute. We note that these words immediately follow the words "bonds authorized but not yet issued" which words are separated from the constitutional reference by a comma, thus suggesting that the latter reference was not intended to modify or limit the type of situation in which temporary loans might be made to be paid from the proceeds of bonds. Our view in this respect is further bolstered by the fact that Article IX, sec. 14 of the Constitution makes specific reference to Article IX, secs. 14–A and 14–B and thus in effect incorporates those sections into section 14 as part and parcel of the overall plan for protecting the credit of the State. In Opinion of the Justices (Me.1970) 261 A.2d 250, 253 all of the Justices were of the view that by the enactment of 10 M.R.S.A. secs. 802 and 6002, sections 14–A and 14–B bonds were "authorized but unissued" within the meaning of the language employed in section 14 of the Constitution. In short, in construing the constitutional safeguards designed to protect the credit of Maine, sections 14,

14–A and 14–B must be read together, and in construing a statute clearly intended to further the same purpose, a like rule applies. No practical reason suggests itself for any legislative intention to omit purposely authority to make the temporary loans in anticipation of the issuance of bonds authorized pursuant to section 14–A. The present emergency which prompts these questions adequately and forcefully illustrates the fact that occasions can and do arise when delays attendant upon a bond issue may not be tolerable and the need for temporary interim financing imperative. In construing 5 M.R.S.A. sec. 150 we should not and do not ascribe to the Legislature any intention to achieve an absurd or impractical result, and where ambiguity is present and the language employed permits an interpretation consistent with the legislative purpose, that interpretation should be given. We treat the words "as provided by the Constitution of Maine, Article IX, section 14" as meaning within the context of 5 M.R.S.A. sec. 150 "subject to the provisions of the Constitution of Maine, Article IX, section 14, where applicable." We further construe the words "bonds authorized but unissued" as including bonds authorized pursuant to the constitutional authority contained in section 14–A of the Constitution. In conclusion we note that although there is no express constitutional authority for making temporary loans to be paid from the proceeds of *any* type of authorized State bonds to be found in either section 14, 14–A or 14–B of the Constitution, neither is there any express or implied prohibition thereof. "The legislature of Maine may enact any law of any character or on any subject, unless it is prohibited, either in express terms or by necessary implication, by the Constitution of the United States or the Constitution of this State." Baxter v. Waterville Sewerage District (1951) 146 Me. 211, 215, 79 A.2d 585, 588. For like expressions see Opinion of the Justices (1941) 137 Me. 350, 353. It was thus clearly within the power of the Legislature to provide by statute for the making of temporary loans to be paid from the proceeds of authorized bond issues in the manner and to the extent accomplished by 5 M.R.S.A. sec. 150 as we now construe it.

QUESTION 2. Are the temporary notes negotiated by the Treasurer of State in anticipation of the issuance of bonds authorized by 10 M.R.S.A. § 802 which was enacted by the legislature by authority of Article IX, section 14–A, following approval by the Governor and Council on August 26, 1970 and December 16, 1970, valid?

ANSWER: This question has been submitted to us accompanied by a "Statement of Facts" in which it is said:

"The Governor and Council by Orders dated August 26, 1970 and December 16, 1970, * * * gave approval to the Treasurer of State to negotiate temporary loans to finance the requirements of the Maine Industrial Building Authority in anticipation of the issuance of bonds authorized by 10 M.R.S.A. § 802. The loans were negotiated by the Treasurer of State and the notes issued pursuant to the Orders are due April 1, 1971."

The Statement of Facts continues by referring to an informal opinion of the Attorney General expressing doubt as to the propriety, under the authority of 5 M.R.S.A. § 150, of "issuance of temporary notes to finance the requirements of the Maine Industrial Building Authority in anticipation of the issuance of bonds under 10 M.R.S.A. § 802."

Against this factual background we interpret Question 2, insofar as it refers to the "validity" of the "temporary notes negotiated * * * following approval by the Governor and Council on August 26, 1970 and December 16, 1970", to be concerned with the single cloud of impropriety raised, and the only deficiency called to our attention, namely, the "validity" of the "issuance of temporary notes * * * in anticipation of the issuance of bonds under 10 M.R.S.A. § 802", specifically, and only,

in relation to whether such authority is conferred by 5 M.R.S.A. § 150.

We are confirmed in this interpretation of the import of Question 2 by the additional statement of fact that

"It is imperative that the Governor be advised as to the questions [Questions 1 and 2] * * * so that a proper *decision* can be made with respect to the *discharge of the State's liability on the reference notes before their due date.* [April 1, 1971] * * *." (emphasis supplied)

Construing the sense of Question 2 in this manner, we answer it in the affirmative for the same reasons delineated in our answer to Question 1. We are satisfied that the temporary notes which are the subject matter of this Question 2 are "valid"—(unless they suffer from some legal infirmity other than presently raised or apparent)—as temporary notes negotiated pursuant to a lawful authority conferred by 5 M.R.S.A. § 150.

Dated at Auburn, Maine, this thirty-first day of March, 1971.

Respectfully submitted:

ARMAND A. DUFRESNE, Jr.

DONALD W. WEBBER

RANDOLPH A. WEATHERBEE

CHARLES A. POMEROY

SIDNEY W. WERNICK

JAMES P. ARCHIBALD