This case has had a long and tortuous journey, the facts of which are fully set out in the trial judge's decree, which follows:
"JUDGMENT AND FINAL DECREE
 I Introduction
"This action was commenced by The Mead Corporation (hereinafter `plaintiff' or `Mead') on February 17, 1975, against The City of Birmingham, a municipal corporation (hereinafter `defendant' or `Birmingham') and other defendants in order to contest the legality of a proposed annexation by defendant of certain territory lying in the Oxmoor Valley section of southwestern Jefferson County (hereinafter the annexation by Birmingham is referred to as the `Oxmoor Annexation' and the territory to be annexed is referred to as the `Oxmoor Area'). Plaintiff's complaint, as originally filed (a) sought a temporary restraining order and preliminary injunction preventing the conduct of the Oxmoor Annexation, and (b) attacked the Oxmoor Annexation on a number of distinct grounds, certain of *Page 423 
which grounds were later eliminated prior to trial.[1]
"The Oxmoor Annexation was initiated by Birmingham on February 4, 1975, pursuant to the provisions of Sections 137[138]-187, Article 2, Title 37, Code of Alabama of 1940 (1958 recomp. ed.), when the City Council of Birmingham adopted its Resolution No. 146-75 (hereinafter referred to as the `Annexation Resolution'). Under the Annexation Resolution as required by the statute, the City Council found that the `public health and good' of Birmingham required that the Oxmoor Area be annexed and incorporated within Birmingham's municipal limits.
"On February 5, 1975, the Honorable George C. Seibels, the then Mayor of Birmingham, approved the Annexation Resolution and certified a copy thereof which, on February 7, 1975, was filed with the Judge of Probate of Jefferson County and docketed in his office in the Birmingham Division as Probate Case No. 82948. On that same day, the Honorable J. Paul Meeks, Judge of Probate, made and entered an ORDER OF ELECTION directing and ordering an annexation election to be held on March 8, 1975, by qualified electors residing within the Oxmoor Area (hereinafter referred to as the `Annexation Election'). Later, on February 13, 1975, the Probate Judge signed a `Notice of Election for Annexation of Certain Territory to the City of Birmingham (hereinafter referred to as the `Election Notice'). As prescribed by statute, the Election Notice was published in The Birmingham-Post Herald, a newspaper of general circulation in Jefferson County, once a week for three (3) consecutive weeks prior to the Annexation Election.
"The temporary restraining order requested by plaintiff, which would have prohibited the conduct of the Annexation Election, was initially granted by Judge Harry E. Pickens of the Tenth Judicial Circuit of Alabama, Bessemer Division, and a hearing was set on the preliminary injunction for a later date. In the meantime, on February 19, 1975, United States Steel Corporation (hereinafter sometimes referred to as `United States Steel' or `intervenor') and others[2] moved to intervene as plaintiffs. The motion of United States Steel for intervention was later granted.
"On February 22, 1975, Birmingham filed, with the Circuit Court sitting in the Bessemer Division, a Motion to Transfer seeking to change the venue of this cause from the Bessemer Division to the Birmingham Division. While this motion was pending, a hearing was held on February 26, 1975, in the Bessemer Division wherein Judge Pickens extended his Temporary Restraining Order pending a final determination of the issues raised by Birmingham's Motion to Transfer. Birmingham immediately filed a notice of appeal to the Supreme Court of Alabama seeking a stay of this Temporary Restraining Order, and when this appeal was heard on March 5, 1975, the Supreme Court issued an Order (a) staying the Temporary Restraining Order, and (b) ordering the Judge of Probate to proceed with the Annexation Election, but instructing him to withhold the entry of any order of annexation until final disposition of this litigation. Thereafter, on March 8, 1975, consistent with this Order, the Annexation Election was held, and the voters within the Oxmoor Area elected overwhelmingly to come into the City of *Page 424 
Birmingham by a vote of 60 to 1. As will be indicated hereinafter, the Court finds this overwhelming vote in favor of the Oxmoor Annexation to be highly significant.
"After the Annexation Election, Birmingham's Motion to Transfer was overruled by Judge Pickens on April 3, 1975, and Birmingham filed a Petition for Writ of Mandamus in the Supreme Court of Alabama seeking to require Judge Pickens to transfer this cause to the Birmingham Division. After a hearing on this Petition on October 2, 1975, which, incidentally, marked the second time this litigation had come before the Supreme Court, an Order was issued transferring the cause to the Birmingham Division. See In re The Mead Corporation v. City of Birmingham, [295] Ala. [14], 321 So.2d 655 (1975). The case was then assigned to this Court, and trial was continued by agreement of the parties and with the approval of this Court until final disposition of Community Fire District v. City of Birmingham, Ala., 336 So.2d 502 (1976), another contested annexation involving the Pinson Valley area of Jefferson County. After Community Fire District, the case progressed and several pre-trial conferences were held, during the course of which plaintiff filed a Motion for Summary Judgment based on certain of the matters discussed hereinafter. The Court later overruled this motion.
"Prior to trial, Birmingham and the other defendants answered plaintiff's complaint and the complaint of intervention[3]
denying the material allegations thereof and requesting, as affirmative relief, that the Court declare the Oxmoor Annexation valid and lawful in all respects.
"This cause came on for hearing on the 28th day of September, 1976, the date set for such hearing, and following a continuance requested by all parties thereto, said hearing was completed on the 28th day of October, 1976. All parties were represented by counsel throughout, and the case was heard, oretenus, without a jury. During the hearing, the parties introduced certain documentary evidence, including the Probate Court file, and the Court was presented with the testimony of several witnesses. Following the hearing, the cause was submitted upon the pleadings, the testimony taken, ore tenus, and the documentary materials offered into evidence. This Court then requested and received excellent briefs from the parties, all of which have been very ably represented throughout this litigation.
 II
"Findings of Fact and Conclusions of Law
"The Court has evaluated the pleadings, the testimony and documentary evidence presented at trial and has read and studied the respective briefs. At the outset, the Court notes that this case does not involve arbitrary, capricious or unreasonable conduct by Birmingham or any alleged `gerrymandering' of the Oxmoor Area. Accordingly, this case does not fall within the ambit of Community Fire District, supra.
"Plaintiffs are property owners within the Oxmoor Area. At trial (and later in their trial brief), plaintiffs focused upon four (4) alleged defects or errors allegedly committed by Birmingham in connection with the Oxmoor Annexation. Since Birmingham has responded to each allegation seriatim, the issues have been clearly framed for determination.
"After analysis and evaluation of the testimony, pleadings and proof, the Court concludes that all of the alleged errors asserted by plaintiffs are, at best, minor and insignificant. None are material enough to void the Oxmoor Annexation which has been recommended by the governing body of the City of Birmingham and endorsed virtually unanimously by the registered voters in the Oxmoor Area. The Court's conclusions with respect to each of the alleged errors which plaintiff has argued will next be specifically set forth. *Page 425 
 A. "Homewood's Annexations
"As previously mentioned, Birmingham officially commenced the Oxmoor Annexation by adopting the Annexation Resolution on February 4, 1975. After Birmingham began the annexation — in what the Court considers to be basically defensive maneuvers — the City of Homewood began a series of `consensual' annexations under the provisions of Section 137 (1), Title 37 of the Code of Alabama of 1940 (1973 Cu.Supp.), in an effort to incorporate within its municipal boundaries certain of the territory already subject to the Annexation Election. These annexations began at a regularly scheduled Homewood City Council meeting held on February 10, 1975 [six (6) days after Birmingham officially commenced the Oxmoor Annexation], and continued for the next six (6) weeks.
"Section 152 of Title 37, Code of Alabama of 1940 (1958 recomp. ed.) provides that territory annexed under Article 2 must be `contiguous' to the boundary of the annexing city and `not . . . within the corporate limits of another city'. Seizing upon this provision, plaintiffs argue that Birmingham's Oxmoor Annexation is void because it embraces territory which is actually within the Homewood corporate limits. Plaintiffs' argument is not compelling, however, since it is well recognized that once a municipality has officially commenced proceedings directed toward annexing certain territory, that municipality retains full and exclusive jurisdiction over such territory until the conclusion of said proceedings. See 1 Yokley, Municipal Corporations, 56-57; 2 McQuillin, Municipal Corporations, Section 7.22a; City of Tualatin v. City of Durham
[249 Or. 536], 439 P.2d 624 (Ore. 1968); City of Countryside v.Village of LaGrange, [24 Ill.2d 163], 180 N.E.2d 488 (Ill. 1960); City of Lincolnshire v. Highbough [Highbaugh] RealtyCo., 278 S.W.2d 636 (Ky.App. 1955). Here it is clear that Birmingham took the first step in passing the Annexation Resolution on February 4, 1975, several days before Homewood began its annexation efforts. This Court finds, therefore, that (a) Birmingham had and has retained exclusive jurisdiction of the Oxmoor Area for annexation purposes; (b) Homewood had no right or power to initiate any subsequent annexations in this territory; and (c) the Oxmoor Annexation was not an infringement upon Homewood's city limits. Plaintiffs' contention with respect to Section 152 is without merit.[4]
 B. "The Election Notice
"The Election Notice did not contain any express reference to Article 2, Title 37, Code of Alabama of 1940. Plaintiffs argue, as their second point, that Section 186 of Title 37, Code of Alabama of 1940 (1958 recomp. ed.) requires that the published notice expressly refer to the fact that such publication was being made under such Article, and that the failure to refer to said Article 2 was a jurisdictional defect.
"Whether Section 186 should be construed so strictly and literally as plaintiffs argue depends upon an analysis of the section and its interpretation in the statutory annexation framework. First the Court notes that the language of Section 186 is almost identical to Section 136, Article 1, Title 37, Code of Alabama of 1940 (1958 recomp. ed.). Both of such sections relate to the same subject of annexation, both were adopted at the same time, and both presumably embody the same legislative intent. Significantly, the literal approach argued so vehemently by plaintiffs here was *Page 426 
expressly rejected by the Supreme Court of Alabama in State v.City of Birmingham, 167 Ala. 651, 52 So. 461 (1910) andTalladega v. Jackson-Tinney Lumber Co., 209 Ala. 106,95 So. 455 (1923). There the Supreme Court held that the requirements of the predecessor statute to Section 136 were directory only and not mandatory or jurisdictional. This same reasoning should apply here since Section 186 should be interpreted in parimateria with Section 136.
"Furthermore, it must be noted that plaintiffs' argument is not that no notice was given to the general public or to residents in the Oxmoor Area, but simply that the notice did not spell out that the election was called under Article 2. The Court fails to see how a reference to Article 2 in the Election Notice could have any real meaning to residents of the Oxmoor Area or to the general public. Plaintiffs, of course, have attempted to draw a distinction between Articles 1 and 2 on the basis of the statutory tax-exemption contained in Article 2 [see Title 37, Section 153, Code of Alabama of 1940 (1958 recomp. ed.)], which is not available under Article 1. Yet, this tax exemption exists as a matter of law as a benefit — not a detriment — to persons residing in the area to be annexed. Certainly this statutory benefit would not be a reason for mandatory mention of Article 2 in the Election Notice since failure to notify potential voters of a benefit could hurt only the annexing municipality.
"The Court finds that adequate notice was given by defendants to persons in the Oxmoor Area affected by the Annexation Election, and those persons who were interested enough to vote expressed an overwhelming desire to join Birmingham. The failure of the Election Notice to state in terms that said notice was given under the provisions of Article 2, Title 37, Code of Alabama of 1940 (1958 recomp. ed.), is not a jurisdictional or fatal flaw which would void this annexation.
 C. "The Legal Description
"Plaintiffs' third contention is that the Oxmoor Annexation is void because of alleged inaccuracies in the legal description attached to the Annexation Resolution and later published in The Birmingham Post-Herald. This legal description is a lengthy, metes and bounds designation of approximately 25 miles of boundary line circumscribing approximately 3,570 acres of property.
"The Court has evaluated the testimony of two expert witnesses concerning this point, one called by plaintiffs, Mr. James Gay, and one called by defendant, Professor Dan Turner, a registered engineer and land surveyor and member of the faculty of the University of Alabama in Tuscaloosa. Each witness reviewed the legal description and noted certain ambiguities, each of which was discussed in some detail.
"Substantial accuracy (not perfection) is all that is required in an annexation description. See generally State v.City of Birmingham, 167 Ala. 651, 52 So. 461 (1910).[5] At trial Professor Turner concluded that the legal description of the Oxmoor Area was sufficient and valid and was capable of being staked and located on the ground in a survey. The Court agrees and concludes that the legal description is accurate, valid and capable of location on the ground, with closure.
"Plaintiffs also argue, in connection with this point, that the legal description is complicated and could not be understood by a layman. This is quite true since it is virtually impossible to write any legal description embracing twenty-five (25) miles of boundary over diverse and widely varying terrain, in language which would be comprehensible to a layman. However, this is not the test. The legal description of the Oxmoor Area sets forth precisely the configuration of the territory purported to be annexed by use of a metes and bounds *Page 427 
description which can be identified and located by a land surveyor on the ground, and this description is more than adequate.
 D. "The Bessemer Division
"A portion of the Oxmoor Area lies within the Bessemer Division of Jefferson County and, although a copy of the map of the area was filed with the Judge of Probate of Jefferson County, Alabama, in the Birmingham Division, such a map was not filed in the Bessemer Division. Plaintiffs argue, as their final point, that this was jurisdictionally fatal. Plaintiffs' argument here is based on the provisions of Section 142, Title 37, Code of Alabama of 1940 (1958 recomp. ed.), which provides, in part, as follows:
"`The said judge [of probate] shall give notice of the holding of such election by publication in at least one newspaper . . and such notice must give a description of the territory proposed to be brought within the city . . . and must state that a map showing the territory proposed to be brought into the city is on file in the office of the judge of probate of said county, open to the inspection of the public.'
"Plaintiffs argue that this language means that two maps were required to be filed. The Court cannot agree. Since a map of the Oxmoor Area was filed with the Judge of Probate of Jefferson County in his office in the Birmingham Division, it was not mandatory that another map or plat be filed in the Bessemer Division as well. The legislation which created the Bessemer Division in Jefferson County did not create a separate county. See Sections 160-168, Title 12, Code of Alabama of 1940 (1958 recomp. ed.). Clearly there is only one Judge of Probate of Jefferson County and the map showing the territory purposed to be annexed was on file in that Judge's office in Birmingham, precisely as the statute requires. Moreover, annexations do not involve title to property or property rights in general, and the filing with the Judge of Probate is not, strictly speaking, intended to be the primary method of notice to the public under Article 2. This follows from the fact that Section 142 speaks primarily of notice by publication with a reference in thepublished notice that the map is on file. The Election Notice here was published for three (3) consecutive weeks in The Birmingham Post-Herald, a newspaper having general circulation throughout the entirety of Jefferson County, and the map was on file in the office of the Judge of Probate in Birmingham. Under these circumstances, the notice given by Birmingham met the requirements of Section 142.
"Moreover, there is another fatal flaw in this argument of plaintiffs. Even had the notice here given been defective, it could not conceivably have affected the outcome of the election. The testimony of plaintiffs themselves clearly shows that there were, at best, only two (2) registered voters in the Bessemer Division residing within the Oxmoor Area. In view of the overwhelming vote of 60 to 1 in favor of annexation, even assuming that the two (2) Bessemer voters did not have either actual or constructive notice of the election and that these voters would have voted in opposition to annexation, they still could not have possibly affected its outcome. To reiterate, the Court finds this overwhelming vote in favor of annexation highly significant, particularly since courts have uniformly applied an outcome determinative test to resolve minor questions of voting irregularities. See Edmonson v. Brewer,282 Ala. 336, 211 So.2d 469 (1968); Swaim v. Tuscaloosa County,267 Ala. 509, 103 So.2d 769 (1957); Doody v. State, 233 Ala. 287,171 So. 504 (1936); 1 Yokley, Municipal Corporations, 55; 3 McQuillin, Municipal Corporations, Section 12.10; and 2 McQuillin, Municipal Corporations, Section 7.37.
 "CONCLUSION
"None of the alleged errors raised by plaintiffs are sufficient to void the Annexation Election held on March 8, 1975, nor are they otherwise substantial or material enough to invalidate the Oxmoor Annexation. The actions of Birmingham in defining the territory in question here, in drawing *Page 428 
the boundary lines thereof, in conducting the Annexation Election, setting forth and publishing the legal description of the Oxmoor Area, and otherwise relating to the Oxmoor Annexation in general were proper, reasonable and lawful under the circumstances. It is, therefore, CONSIDERED, ORDERED, ADJUDGED and DECREED that:
"(1) Judgment be, and the same hereby is entered in favor of defendant, City of Birmingham, and the other defendants in this cause;
"(2) The annexation by the City of Birmingham of the territory embraced within Resolution No. 146-75 and made the basis of this cause be, and it hereby is, declared a valid, reasonable and lawful action of the City of Birmingham;
"(3) A copy of this order be, and the same hereby is, forwarded to the Honorable O.H. Florence, Judge of Probate of Jefferson County, who is hereby directed to enter a Final Order of Annexation incorporating, permanently, the territory made the basis of the Oxmoor Annexation within the corporate boundaries of the City of Birmingham; and
"(4) All costs of this action be, and they hereby are, taxed against plaintiff and intervenor, separately and severally, for which let execution issue.
"DONE and ORDERED on this the 21st day of December, 1976.
 "/S/ W.C. Barber
"Circuit Judge in Equity Sitting
 "cc: Norman Brown, Esq. J. Fred Powell, Esq. William Murray, Esq. James L. North, Esq. Frank M. Young, III, Esq. Philip W. Norwood, Esq. The Honorable Orris H. Florence"
The plurality (Justice Jones concurs only in the result),reverses and remands on the ground that Homewood was an "indispensable" party. I think that Homewood clearly was not an "indispensable" party under the familiar test of Shields v.Barrow, 1854, 17 How. 130, 139, 15 L.Ed. 158, that such parties have "an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." SeeDelaware County v. Diebold Safe Lock Co., 1890, 133 U.S. 473,488, 10 S.Ct. 399, 403, 33 L.Ed. 674; Hubbard v. ManhattanTrust Co., 2 Cir., 87 F. 51; Rogers v. Penobscot Mining Co., 8 Cir., 154 F. 606; 3 Moore, Federal Practice (2d ed.) p. 2178.
Assuming Homewood had such an interest of such a nature that a final decree could not be made without affecting that interest, the question then is whether the "pleadings" reveal that interest by Homewood.
Rule 19 (c), ARCP, provides:
 "A pleading asserting a claim for relief shall state the names, if known to the pleader, of any persons as described in subdivision (a)(1)-(2) hereof who are not joined, and the reasons why they are not joined." (emphasis added).
The Supreme Court of the United States, in United States v.Aetna Casualty Surety Co., 338 U.S. 366, at page 382,70 S.Ct. 207, at page 216, 94 L.Ed. 171, states:
 ". . . The pleadings should be made to reveal and assert the actual interest of the plaintiff, and to indicate the interests of any others in the claim." (emphasis added).
As I interpret our present Rule 19, and our former practice, a court should note the absence of an indispensable party only when the absence is apparent on the "face of the pleadings." InAmann v. Burke, 237 Ala. 380, 186 So. 769 (1939), which the plurality cites, it is stated:
 ". . . `Equity takes note of a want of necessary parties apparent on the face of a bill, and refuses to proceed until such party is brought in.' English v. Huckaba, et al., 219 Ala. 526, 122 So. 841, 842; Prout v. Hoge, 57 Ala. 28; Baisden v. City of Greenville, 215 Ala. 512, 111 So. 2; McMaken v. McMaken, 18 Ala. 576." (emphasis added). *Page 429 
Lastly, even assuming the plurality opinion is correct, and that Homewood is "indispensable," the appeal should bedismissed, and the judgment should not be reversed andremanded, because the judgment would be void, and an appeal cannot be taken from a void judgment. See the myriad of cases in 2A Ala.Dig., Appeal and Error, 782. In fact, in Amann v.Burke, supra, which is cited by the plurality, this Court stated:
 "Inasmuch as the appeal is by the guardian, and the bill filed by her, upon which the final decree was entered, discloses the absence of necessary parties, the only proper decree that can be here rendered is one of dismissal of the bill. Accordingly, such an order will be entered. However, the dismissal of the bill will be without prejudice. Prout v. Hoge, 57 Ala. 28; Winsett et al. v. Winsett, 203 Ala. 373, 83 So. 117; Singo v. Brainard, 173 Ala. 64, 55 So. 603.
 "Bill and cross-bill are dismissed, but without prejudice." (emphasis added).
Consequently, even assuming the plurality is correct, and Homewood is indeed an "indispensable" party, the only proper order would be to dismiss the appeal.
[1] Plaintiff's original complaint attacked the Oxmoor Annexation not only on the several grounds actually asserted at trial, but also on the grounds that: (i) Birmingham acted arbitrarily, capriciously and unreasonably in the proposed annexation; (ii) the Oxmoor Area was not homogeneous; (iii) Birmingham, by `polling' and direct solicitation of residents `gerrymandered' the territory in an illegal and unconstitutional manner; and (iv) the statute under which Birmingham attempted the annexation was unconstitutional. By an amendment to the complaint filed shortly prior to the continuation of the trial of this action on October 28, 1976, these aspects of the case were deleted by plaintiff voluntarily, since these matters were no longer in contention.
[2] The Cities of Brownsville, Lipscomb and Hoover originally sought to intervene in this cause in the Bessemer Division, but later, after the case was transferred to this Court, these intervenors voluntarily, and by agreement, withdrew.
[3] Since the positions of Mead and United States Steel as intervenor are parallel and were, in fact, presented jointly during the course of these proceedings, said parties will be hereinafter referred to jointly as `plaintiffs'.
[4] The Court also notes that all of the annexations by Homewood under Sections 137 (1)-(3), Title 37, Code of Alabama of 1940 (1973 Cum.Supp.), were, according to the uncontradicted testimony of Hobson Riley, Senior Engineer of the City of Birmingham, within three (3) miles of the city limits of the City of Birmingham, and, therefore, within Birmingham's police jurisdiction. Accordingly, under State v. City of Tarrant City,294 Ala. 304, 315 So.2d 583 (1975), the court questions whether Section 137 (1) would be available to Homewood to annex this territory even if Birmingham had not commenced its annexation prior to Homewood's efforts.
[5] As indicated in 2 McQuillin, Municipal Corporations, Section 7.05, it is clear that `the description of corporate boundaries is not required to have the particularity ordinarily found in deeds'.